# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-10502

United States Court of Appeals
Fifth Circuit

**FILED**

April 14, 2017

Lyle W. Cayce
Clerk

RANDY J. AUSTIN,

      Plaintiff - Appellant

v.

KROGER TEXAS, L.P., doing business as Kroger Store #209,

      Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:11-CV-1169

Before WIENER, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Randy J. Austin appeals the district court's (1) denial of his motion to reconsider an order denying leave to file a surreply and (2) grant of summary judgment to Kroger Texas, L.P., on his ordinary negligence/necessary instrumentalities claim. The district court, in one memorandum opinion and order, both denied the motion to reconsider for Austin's failure to satisfy Federal Rule of Civil Procedure 59(e) and granted summary judgment in favor

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-10502

of Kroger on three independent grounds.  For the reasons explained below, we REVERSE in part, VACATE in part, and REMAND the case for further proceedings consistent with this judgment, as more fully explained below.

## I.  Background

Plaintiff-Appellant Randy J. Austin was a long-time employee of Defendant-Appellee Kroger Texas, L.P., working for the company in various positions since 1997.  In 2008, Austin became a "utility clerk" at the Kroger store in Mesquite, Texas.  His responsibilities included bagging groceries, consolidating carts, and sweeping, mopping, and cleaning the store's restrooms.

On the morning of July 27, 2009, other employees of the Kroger store at which Austin worked performed an annual cleaning of the store's condenser units, housed on the roof, or "mezzanine level," of the building.  This process involved Kroger employees power-washing the condensers, which resulted in a "brownie oily looking substance" leaking through the store's ventilation ducts and creating spills in both the men's and women's restrooms.  Austin's supervisor directed him to clean up "whatever mess" the condenser cleaning made.  Austin had never worked on a day when the condensers had been power-washed and was, therefore, unfamiliar with the liquid he was to clean up.

Kroger's safety handbook recommends that store management make certain that a cleaning product called "Spill Magic" is adequately supplied at all times.  Spill Magic is a powdery absorbent that allows a liquid spill to be cleaned with a broom and dustpan.  Normally, Austin's utility cart, which Kroger provided, included Spill Magic.  On the day the store cleaned its condenser units, however, Kroger did not have any Spill Magic available for Austin to use.  Austin instead attempted to clean up the liquid with a dry mop. He successfully cleaned a small puddle in the women's restroom and then

proceeded to clean the men's restroom, where the brownish liquid covered about eighty percent of the floor. Austin placed "wet floor" signs around the area and carefully took "baby steps" as he moved throughout the spill. After successfully cleaning thirty to forty percent of the spill in the men's restroom, Austin slipped in the remaining liquid and fell, fracturing his femur and dislocating his hip. As a result of his injuries, Austin spent nine months in the hospital and underwent six surgeries, leaving his left leg two inches shorter than his right leg.

Austin originally filed the underlying lawsuit against Kroger in June 2011 in state court, seeking damages for the injuries that he suffered as a result of his slip and fall. He alleged causes of action against Kroger for premises liability, gross negligence, and ordinary negligence. In support of his ordinary negligence claim, Austin alleged two different theories of liability: Kroger had (1) engaged in negligent activities and (2) failed to provide Austin a "necessary instrumentality" to perform his job safely—specifically, Spill Magic.

Kroger removed the case to federal district court, and this court ultimately affirmed the district court's grant of summary judgment on Austin's premises liability, gross negligence, and ordinary negligence/negligent activities claims. However, because the district court failed to consider Austin's ordinary negligence/necessary instrumentalities claim, we remanded the case to that court so that it could consider that claim in the first instance. *See Austin v. Kroger Texas, L.P.*, 614 F. App'x 784 (5th Cir. 2015).

Following our remand, Kroger moved for summary judgment on Austin's ordinary negligence/necessary instrumentalities claim. After the close of summary judgment briefing, but before summary judgment was granted, Austin moved for reconsideration of his previously denied motion for leave to file a surreply. Attached to that motion was an expert report on causation,

which Austin claimed would establish a material issue of fact as to causation. Although the expert report was first filed with the district court in Austin's motion for reconsideration, it had previously been provided to Kroger about a week before Kroger filed its summary judgment motion. A few weeks after Austin moved for reconsideration, the district court—in the same memorandum opinion and order—both denied Austin's motion for reconsideration and granted Kroger's motion for summary judgment. Austin timely appealed both rulings.

## II.  Standard of Review

This court reviews de novo a district court's grant of summary judgment, applying the same standard as the district court. *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 417 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). All evidence is viewed in the light most favorable to the nonmoving party and all reasonable inferences are drawn in that party's favor. *Crawford v. Formosa Plastics Corp.*, La., 234 F.3d 899, 902 (5th Cir. 2000).

This court reviews the district court's denial of a motion for reconsideration for an abuse of discretion. *Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1414 (5th Cir. 1993). "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *United States v. Yanez Sosa*, 513 F.3d

No. 16-10502

194, 200 (5th Cir. 2008) (quoting *United States v. Ragsdale,* 426 F.3d 765, 774 (5th Cir. 2005)).

## III. Discussion

The district court articulated three independent grounds for granting Kroger's summary judgment motion on Austin's ordinary negligence/necessary instrumentalities claim: (1) Kroger had no duty to provide Spill Magic because Austin failed to create a genuine issue of material fact as to whether Spill Magic was a necessary instrumentality; (2) Kroger had no duty to provide Austin with a necessary instrumentality while he was performing "customary work"; and (3) Austin failed to create a genuine issue of material fact as to whether Kroger's failure to provide Spill Magic caused his injuries. The district court also denied Austin's motion for reconsideration because it failed to satisfy the requirements of Federal Rule of Civil Procedure 59(e). We address each ground for summary judgment in turn, and discuss the denial of Austin's motion for reconsideration within the discussion on causation.

## A. Issue of Material Fact as to Whether Spill Magic was a Necessary Instrumentality

The district court first concluded that Kroger did not owe Austin a duty to provide Spill Magic because Austin's evidence did not create a material fact issue about whether Spill Magic was necessary for the safe performance of his job. Because there is a genuine issue of material fact as to whether Spill Magic was necessary to the safe performance of Austin's job, summary judgment was not appropriate on this ground.

Under Texas law, an employer has a duty to "provide needed safety equipment" to employees. *Kroger Co. v. Elwood,* 197 S.W.3d 793, 794 (Tex. 2006); *see also Martinez v. Delta Brands, Inc.,* 515 S.W.2d 263, 265 (Tex. 1974) ("[T]he employer [has a duty] to furnish equipment adequate to enable an employee safely to do a job[.]"). However, employers have "no duty to provide

equipment or assistance that is unnecessary to the job's safe performance." *Elwood*, 197 S.W.3d at 795.

In *Allsup's Convenience Stores, Inc. v. Warren*, a Texas Court of Appeals considered several factors relevant to determining that an instrumentality was not necessary for the safe performance of an employee's job: (1) the employee had never requested the instrumentality in question; (2) the employee had not complained that the task she was performing was unsafe; (3) the employee had safely performed the task in the past without injury; (4) there was no evidence that the instrumentality "was commonly used in, or had been established by industry standards or customs as a safety measure for" her job; (5) there was no evidence that "a reasonably prudent employer would have provided such instrumentality"; and (6) there was no medical evidence that the instrumentality would have prevented the employee's injury. 934 S.W.2d 433, 438 (Tex. App.—Amarillo 1996, writ denied). Here, the district court applied those factors and determined that there was no evidence from which a reasonable jury could conclude that Spill Magic was a necessary instrumentality for the safe performance of Austin's job.

Applying the *Allsup's* factors, we hold that there is a material fact issue as to whether Spill Magic was a necessary instrumentality, specifically pertaining to the fourth and fifth *Allsup's* factors. *See id.* Austin testified that whenever he "arrived at a wet spill that had oil or water on the ground," he would use Spill Magic to clean up the mess. Austin also testified that Spill Magic is "effective"[1] when cleaning spills and that it was customarily provided

---

[1] The district court determined that Austin's testimony about Spill Magic's efficacy as a cleaning agent was "speculative" and "not enough." We conclude that a janitor with fifteen years' experience is competent to testify about the effectiveness of cleaning products and methods. *See United States v. Riddle*, 103 F.3d 423, 428–29 (5th Cir. 1997) (acknowledging that we have allowed lay witness opinions that required specialized knowledge as long as the opinion is a "straightforward conclusion[] from observations informed by his own experience" and is "one that a normal person would form from those perceptions").

by Kroger for Austin to use. The store manager at the time of Austin's injury admitted that Spill Magic was an important part of the safety practice at the store. There was also record evidence that Kroger's handbook instructed store management to "make certain that the Spill Magic Spill Response Stations [were] adequately supplied at all times" and available in numerous places throughout the store, in part because Kroger believed that Spill Magic reduced the likelihood of slip and falls by 25%.[2] This evidence, when viewed in the light most favorable to Austin, creates genuine issues of material fact as to whether (1) "the instrumentality was commonly used . . . as a safety measure" and (2) "a reasonably prudent employer would have provided such instrumentality."[3] *See id.*

Kroger places undue emphasis on the fact that, immediately before the accident, Austin had successfully cleaned a spill of the same type of liquid in the women's restroom with a dry mop. Kroger argues that this evidence demonstrates that a dry mop was adequate to safely clean this type of spill, and therefore Spill Magic was unnecessary. However, the fact that Austin had successfully cleaned a much smaller spill in the women's restroom with a dry mop does not conclusively demonstrate that Spill Magic was not necessary for Austin to safely clean a much larger and more serious spill in the men's restroom.[4]

---

[2] Kroger's handbook, when used against Kroger, is admissible nonhearsay evidence as a statement by a party opponent. *See* FED. R. EVID. 801(d)(2).

[3] Austin also contends that the district court should have considered his causation expert's report in its analysis of the *Allsup's* factors. As discussed *infra*, we conclude that the district court abused its discretion in refusing to consider whether to allow the belated expert report to supplement the record. However, even without considering the expert report, we hold that there was a genuine issue of material fact as to whether Spill Magic was a necessary instrumentality for the safe performance of Austin's job.

[4] Indeed, the evidence, when viewed in the light most favorable to Austin, suggests that a dry mop was inadequate to clean a spill the size and type of the one Austin encountered in the men's restroom on the day of his accident. Although Austin testified that the dry mop

No. 16-10502

In sum, when we view the evidence in the light most favorable to Austin, there is a genuine issue of material fact as to whether Spill Magic was a necessary instrumentality for the safe performance of Austin's job. Therefore, summary judgment on this ground was inappropriate.

**B. Duty to Provide Necessary Instrumentalities for an Employee's Customary Work**

The district court next determined that an employer does not have a duty to protect an employee from injury when the employee is engaged in the "customary work" of someone in that line of employment. Moreover, the district court concluded that an employee's injuries sustained during the performance of his customary work are unforeseeable as a matter of law. Accordingly, after finding that Austin's injuries occurred during the performance of his customary work, the district court concluded that Kroger could not be liable for Austin's injuries.

Under Texas law, "[t]he existence of a legal duty is a question of law for the court to decide from the facts surrounding the occurrence in question." *Military Highway Water Supply Corp. v. Morin*, 156 S.W.3d 569, 572 (Tex. 2005) (alteration in original) (quoting *City of McAllen v. De La Garza,* 898 S.W.2d 809, 810 (Tex. 1995)). When determining whether a defendant is under a legal duty, "foreseeability of the risk 'is the foremost and dominant consideration.'" *City of Waco v. Kirwan*, 298 S.W.3d 618, 624 (Tex. 2009) (quoting *Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990)). There is no question that, under Texas law, an employer is under a general duty to provide its employees with necessary instrumentalities to safely perform their work. *Austin v. Kroger Texas, L.P.*, 465 S.W.3d 193, 215

---

heads worked, he also testified that they worked "slowly." Despite spending over thirty minutes cleaning the men's restroom, and despite going through several dry mop heads, Austin had only cleaned thirty to forty percent of the spill before his accident occurred.

(Tex. 2015) ("Austin's instrumentalities claim invokes . . . the duty to furnish reasonably safe equipment necessary for performance of the job."). The only question here is whether the scope of that duty extends to an employee's customary work. Because we conclude that (1) employees may recover for injuries sustained during their customary work when their employers do not subscribe to the Texas Workers' Compensation ("TWC") Act and fail to provide necessary instrumentalities, and (2) Austin's slip and fall would be a foreseeable consequence of failing to provide necessary equipment to safely cleanup spills, summary judgment is not appropriate on this ground.

"Texas allows employers to opt out of its workers' compensation program. Tex. Lab. Code § 406.002(a). 'But the state makes that choice an unattractive one.'" *Austin v. Kroger Tex. L.P.*, 746 F.3d 191, 197 (5th Cir. 2014) (quoting *Hook v. Morrison Milling Co.,* 38 F.3d 776, 778 (5th Cir.1994)). The TWC Act vests employees of nonsubscribing employers[5] with the right to bring "an action against [their] employer" "to recover damages for personal injuries or death sustained . . . in the course and scope of the employment." TEX. LAB. CODE § 406.033(a); *see also Austin*, 746 F.3d at 197–98 (noting that the TWC Act "vests employees of non-subscribing employers with the right to sue their employers for work-related injuries or death"). The Code defines "course and scope of employment" broadly, so as to include the performance of

> an activity *of any kind or character* that has to do with and originates in the work, business, trade, or profession of the employer and that is performed by an employee while engaged in or about the furtherance of the affairs or business of the employer.

TEX. LAB. CODE § 401.011(12) (emphasis added). This broad definition of "course and scope of employment" notably does not include any exceptions for routine jobs or tasks performed as part of an employee's "customary work."

---

[5] It is undisputed that Kroger is a nonsubscribing employer under the TWC Act.

No. 16-10502

Therefore, under the plain text of the TWC Act, an employee of a nonsubscribing employer may recover damages for personal injuries sustained while performing an activity "that has to do with and originates in the work, business, trade, or profession of the employer," even if that activity is customary or routine.  *See id.* at §§ 401.011(12) & 406.033(a).

The district court relied on the Supreme Court of Texas's decisions in *Great Atlantic & Pacific Tea Co. v. Evans*, 175 S.W.2d 249 (Tex. 1943), *Werner v. Colwell*, 909 S.W.2d 866 (Tex. 1995), and *Kroger Co. v. Elwood*, 197 S.W.3d 793 (Tex. 2006) to nevertheless conclude that a nonsubscribing employer does not have any *duty* to protect an employee from injury while engaged in the "customary work" required of someone in that line of employment.  But these three cases only stand for the general proposition that an employer cannot be liable for *breaching* its duty to an employee by merely requiring the employee to perform his usual and customary work with the instrumentalities necessary to safely perform the job.  *See Elwood*, 197 S.W.3d at 794 ("[T]here is no evidence that additional equipment or assistance were needed to perform Elwood's job safely."); *Werner*, 909 S.W.2d at 869 ("[T]here is no evidence that two employees constituted an inadequate work force to do the required loading."); *Evans* 175 S.W.2d at 251 (holding that an employer did not breach its duty by requiring a stock boy to perform his customary work in accordance with industry practice and prior performance).  Instead, as relevant to this case, because the employer has a duty to provide necessary instrumentalities but not unnecessary instrumentalities, the employee must show that the employer failed to provide instrumentalities to the employee that were *necessary* for the safe performance of the employee's customary work.  *See, e.g.*, *Elwood*, 197 S.W.3d at 794–95.

*Evans*, *Werner*, and *Elwood* do not abrogate an employer's "well-established non-delegable and continuous duty to furnish reasonably safe

instrumentalities with which its employees are to work" when the employee is performing his customary job duties. *Katy Springs & Mfg., Inc. v. Favalora*, 476 S.W.3d 579, 589 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (citing *Farley v. M M Cattle Co.*, 529 S.W.2d 751, 754 (Tex. 1975), *overruled on other grounds, Parker v. Highland Park, Inc.*, 565 S.W.2d 512 (Tex. 1978)). Moreover, we are unaware of any case or statute saying that nonsubscribing employers are obligated to provide necessary instrumentalities only when their employees are performing irregular tasks. Were we to recognize such a rule, it would lead to absurd results.[6] For example, employers of hazardous material removal workers would have no duty to provide masks or hazmat suits to employees removing asbestos, lead-based paint, or even radioactive materials, but would have a duty to provide those same employees with necessary instrumentalities for less hazardous tasks outside the normal scope of their employment.

Whether there is evidence of a *breach of such duty* is a different matter, but it cannot be, as the district court determined and as Kroger argues on appeal, that there is *no duty at all* when the employee is engaged in his routine job. *See Martinez*, 515 S.W.2d at 265 ("The duty of the master is *at all times* to exercise ordinary care to furnish for the use of the servant safe and suitable machinery and appliances with which the servant is to do his work." (emphasis added) (quoting *Currie v. Mo., Kan. & Tex. Ry. Co.*, 108 S.W. 1167, 1169 (Tex. 1908))); *see also Austin*, 465 S.W.3d at 216 ("As Austin's employer, Kroger owed Austin . . . the duty to provide [him] with necessary instrumentalities."). Indeed, specific instrumentalities are surely necessary for the safe performance of ordinary, routine jobs. *See, e.g.*, *Martinez*, 515 S.W.2d at 264–

---

[6] It would also largely insulate nonsubscribing employers from liability. This effect, in turn, would create perverse incentives encouraging employers to opt-out of the workers compensation program, contrary to the design of the TWC Act. *See Austin*, 746 F.3d at 197.

No. 16-10502

66 (holding that there was some evidence to support a finding that an employer breached its duty to provide necessary instrumentalities to a welder when it failed to provide the employee with appropriate clamps for a welding job); *Kroger Co. v. Milanes*, 474 S.W.3d 321, 339 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (affirming judgment that an employer breached its duty to provide necessary instrumentalities to a "meat cutter" when it provided a dull blade to the employee); *Springs,* 476 S.W.3d at 586, 589 (affirming judgment that an employer breached its duty to provide necessary instrumentalities to a manufacturing employee when it provided a defective manufacturing machine).

We likewise do not agree that an employee's injuries sustained during the performance of his customary work is unforeseeable as a matter of law when the employer failed to provide necessary instrumentalities to the employee. Under Texas law, "[f]oreseeability means that an actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others." *Alcoa, Inc. v. Behringer*, 235 S.W.3d 456, 460 (Tex. App.—Dallas 2007, pet. denied). Texas courts "have consistently held that foreseeability turns on existence of a general danger, not awareness of the exact sequence of events that produces the harm." *Nabors Well Servs., Ltd. v. Romero,* 456 S.W.3d 553, 565 (Tex. 2015) (citing *Mellon Mortg. Co. v. Holder,* 5 S.W.3d 654, 655 (Tex. 1999) (plurality) (collecting cases)).

The general danger created by failing to provide necessary instrumentalities is obvious to any person of ordinary intelligence, and it is not dependent on whether the employee is performing customary work. *Cf. id.* (explaining that there is a duty to guard against the risks of driving because "[t]he general danger of driving is obvious to everyone," and thus foreseeable). If an instrumentality is necessary for the safe performance of an employee's job, the employee's risk of suffering injuries related to those safety concerns

12

necessarily increases when the employer fails to provide the necessary instrumentality. *See, e.g., Milanes*, 474 S.W.3d at 329, 339 (breaching duty to provide necessary instrumentalities when a dull saw blade caused meat to jump and pull an employee's hand into a band saw and "the probability of meat jumping or rolling increases when the saw's blade is dull"). Contrary to Kroger's assertion, under these circumstances, the employer is not reasonable in expecting the work to proceed like every other day without injury, particularly when the necessary instrumentality is normally provided every other day.

Here, Kroger normally provided Spill Magic to Austin to help him clean spills. On the day of his injury, Kroger asked Austin to clean "whatever mess" the annual condenser cleaning created, which included the "brownie oily looking substance" that Austin encountered in the bathroom. Kroger did not, however, provide him with Spill Magic that day to help clean the spill. Assuming the jury finds that Spill Magic is, in fact, a necessary instrumentality for safely cleaning spills, it should have been foreseeable to Kroger that failing to provide Spill Magic would place Austin at risk of a slip and fall. *Cf. Austin v. Kroger Texas L.P.*, 182 F. Supp. 3d 633, 642 (N.D. Tex. 2016) ("[A] large, oily spill on the ground is undeniably a hazardous condition. But when an employer provides an employee like Austin with instrumentalities to encounter the condition, the instrumentalities adjust the apparent risk.").

Because nonsubscribing employers owe their employees a duty to provide necessary instrumentalities to safely perform their customary work, and because it was foreseeable that Austin might slip and fall if Kroger failed

13

to provide him necessary equipment to clean a spill, we conclude that the district court improperly granted summary judgment on this ground.[7]

## C. Issue of Material Fact as to Causation

The final reason the district court granted Kroger's motion for summary judgment was that it concluded Austin had no evidence to support the element of causation. The district court found that Kroger carried its summary judgment burden as to causation when it alleged that Austin had "no evidence that, more likely than not, Spill Magic would have prevented his fall." Although Austin provided an expert report on causation to Kroger prior to Kroger filing its "no evidence" summary judgment motion, he did not file the expert report with the district court until he moved for reconsideration of the interlocutory order denying him leave to file a surreply. Austin did not attach any evidence to his response to Kroger's summary judgment motion or his subsequent motion for leave to file a surreply, opting instead to rely on his own testimony about Spill Magic's effectiveness as a cleaning agent. The district court rejected Austin's "opinion testimony" about Spill Magic's effectiveness, explaining that, "[i]n a case like this one, where there is no medical testimony linking the alleged negligence to the injury," Austin needed to provide expert testimony to satisfy his burden. Significantly, the district court also refused to consider the "belatedly-submitted expert report" on causation.

---

[7] Kroger also argues that the Supreme Court of Texas already found that Kroger cannot be liable for Austin's injuries because he was performing his customary work. This argument is misplaced. The Supreme Court of Texas did not address whether such a customary work exception applies to an employer's duty to provide necessary instrumentalities. Indeed, it expressly declined to do so. *Austin*, 465 S.W.3d at 216 n.23. Rather, the court addressed exceptions to premises liability and refused to create an exception to the general premises liability rule that an employer does not have a duty to warn employees of dangers that are open and obvious or already known to the employee. *Id.* at 213–14. Both this court and the Supreme Court of Texas have made clear that Austin's necessary instrumentalities claim is independent of his premises liability claim. *See Austin*, 614 F. App'x at 784; *Austin*, 465 S.W.3d at 216.

No. 16-10502

Even though Austin submitted that report on causation for the first time in his motion for reconsideration, the expert report was not new to Kroger. Kroger already had the report at the time it filed its "no evidence" summary judgment motion.[8]  In his motion for reconsideration, Austin explained that his "good-faith reliance on existing case law" led him to believe that, under federal law, Kroger could not rely on a "no evidence" summary judgment motion and thus the burden had not shifted to him to come forward with evidence creating an issue of material fact on causation.[9]  Austin also seemed to argue that Kroger would not be prejudiced by allowing him to supplement the record with the expert report because (1) Kroger received a copy of the expert report about a week before it filed its motion for summary judgment and (2) Austin would not oppose a surrebutal, allowing Kroger to have the last word.  The district court concluded that "Rule 59(e) demands more than this," and, in the same memorandum opinion and order granting summary judgment to Kroger, declined to reconsider the interlocutory order denying Austin's motion to file a surreply.

Austin first maintains that the district court erred when it decided that Kroger successfully shifted the summary judgment burden to Austin to produce evidence on the issue of causation.  Specifically, Austin argues that federal law does not allow for "no evidence" summary judgment motions, but

---

[8] The expert report concluded that "Kroger's failure to provide Spill Magic and Slip resistant foot wear contributed to or was a cause of Austin's slip, fall and injuries."  The expert also executed a declaration, which was attached to his report, that explained the key findings of the expert report and concluded that "it is my opinion that Kroger's failure to provide Austin with 'Spill Magic' and/or 'Shoes for Crews' was a substantial factor in Austin's slip, fall, and the injuries that he suffered as a result."

[9] In Austin's reply in support of his motion for leave to file a surreply, he quoted the following statement of law from *Royal Surplus Lines Insurance Co. v. Brownsville Independent School District* as an example of the case law relied upon: "[T]he concept of a 'no evidence' summary judgment neither accurately describes federal law nor has any particular import in the vernacular of federal summary judgment procedure."  404 F. Supp. 2d 942, 948 (S.D. Tex. 2005).

15

instead requires Kroger to point to evidence in the record showing no issue of material fact on causation.  Under federal law, however, it has long been the rule that when the nonmovant has the burden of proof at trial, the moving party may make a proper summary judgment motion, thereby shifting the summary judgment burden to the nonmovant, with an allegation that the nonmovant has failed to establish an element essential to that party's case. *See, e.g.*, *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999) ("When a moving party alleges that there is an absence of evidence necessary to prove a specific element of a case, the nonmoving party bears the burden of presenting evidence that provides a genuine issue for trial.") (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986)); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075, 1076 n.16 (5th Cir. 1994) (en banc) (noting that the party moving for summary judgment is not required to "*negate* the elements of the nonmovant's case," but may "satisfy [its] burden under *Celotex*" by "assert[ing the] absence of facts supporting the elements of the plaintiffs' theory of recovery").  Kroger satisfied its summary judgment burden when it alleged that there was no evidence of causation—an element essential to Austin's ordinary negligence claim.  *See W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005).  Therefore, Austin was required to present causation evidence to survive summary judgment.[10]

---

[10] Austin contends that our decision in *Ashe v. Corley* dictates a different outcome here.  *See* 992 F.2d 540 (5th Cir. 1993).  In *Ashe*, we held that the movant "totally failed to satisfy [its] burden as set out in *Celotex*," as its motion for summary judgment "failed to raise any factual issues at all, other than in the most conclusory terms. And a mere conclusory statement that the other side has no evidence is not enough to satisfy a movant's burden." *Id.* at 544.  *Ashe* highlights an important distinction—while it is true that a movant cannot support a motion for summary judgment with a conclusory assertion that the nonmovant has no evidence to support his *case*, a movant may support a motion for summary judgment by pointing out that there is no evidence to support a *specific element* of the nonmovant's claim. *See Celotex,* 477 U.S. at 322–23.  The movant in *Ashe* did not point to a specific element on which the nonmovant had the burden of proof at trial and allege that there was insufficient evidence to prove that element at trial.  *Ashe*, 992 F.2d at 544 ("The County's motion for

No. 16-10502

Austin next argues that even if the summary judgment burden shifted to him, the district court also erred when it denied both his motion to file a surreply and his motion for reconsideration. As to Austin's motion to file a surreply, the district court did not abuse its discretion because Kroger did not raise any new arguments in its reply brief, and Austin did not discuss his expert report on causation. *See, e.g., Williams v. Aviall Servs. Inc.*, 76 F. App'x 534, 535 (5th Cir. 2003). As to Austin's motion for reconsideration, however, the district court applied Federal Rule of Civil Procedure 59(e) when it should have applied Federal Rule of Civil Procedure 54(b). Rule 54(b) is less stringent than Rule 59(e) and does not "demand more" than what Austin did to warrant reconsideration. The district court therefore abused its discretion by relying on the wrong rule to deny Austin's motion for reconsideration.

Rule 59(e) governs motions to alter or amend a final judgment; Rule 54(b) allows parties to seek reconsideration of interlocutory orders and authorizes the district court to "revise[] at any time" "any order or other decision . . . [that] does not end the action," FED. R. CIV. P. 54(b). Because the district court was not asked to reconsider a judgment, the district court's denial of Austin's motion to reconsider its order denying leave to file a surreply should have been considered under Rule 54(b). *See Cabral v. Brennan*, No. 16-50661, 2017 WL 1314928, at *2 & n.3 (5th Cir. Apr. 10, 2017) (finding harmless error when the court granted an interlocutory motion for reconsideration after applying the "more exacting" standard of Rule 59 because the losing nonmovant did not "explain how he could have been harmed by the procedural error" of applying a higher burden to the movant).

---

summary judgment failed to point out an absence of proof on any factual issue."). Because Kroger's motion did point to a specific element—causation—the burden shifted to Austin to demonstrate that there was a genuine dispute for trial. *Thomas*, 174 F.3d at 644.

17

Under Rule 54(b), "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990) (citing FED. R. CIV. P. 54(b)), *abrogated on other grounds*, *Little*, 37 F.3d at 1075 n.14; *see also McClung v. Gautreaux*, No. 11-263, 2011 WL 4062387, at *1 (M.D. La. Sept. 13, 2011) ("Yet, because the district court is faced on with an interlocutory order, it is free to reconsider its ruling 'for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" (quoting *Brown v. Wichita Cty.,* No. 7:05-cv-108-0, 2011 WL 1562567, at *2 (N.D. Tex. Apr. 26, 2011))). Rule 59(e), however, "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence," and it is "an extraordinary remedy that should be used sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (alteration in original) (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)).

The D.C. Circuit recently summarized the distinction between Rule 54(b) and Rule 59(e) as follows:

> Rule 59(e), understandably, sets a high threshold for parties to raise a new argument for the first time after judgment has already been entered. . . . In contrast, Rule 54(b)'s approach to the interlocutory presentation of new arguments as the case evolves can be more flexible, reflecting the "inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires."

*Cobell v. Jewell*, 802 F.3d 12, 25–26 (D.C. Cir. 2015) (internal citations omitted) (quoting *Greene v. Union Mutual Life Ins. Co. of Am.,* 764 F.2d 19, 22 (1st Cir.1985) (Breyer, J.)). The D.C. Circuit held that applying Rule 59(e)'s "strict prohibition" against considering new arguments that could have been raised

before the district court's ruling was "unwarranted" and "of legal consequence" when erroneously applied to interlocutory orders. *Id.* Similarly, the Fourth Circuit vacated a partial summary judgment order and remanded for reconsideration of a motion to reconsider under Rule 54(b), when the district court erroneously denied the motion for failing to satisfy the requirements of Rule 59(e). *Saint Annes Dev. Co. v. Trabich*, 443 F. App'x 829, 831–32 (4th Cir. 2011). The Fourth Circuit explained that "[t]he power to reconsider or modify interlocutory rulings 'is committed to the discretion of the district court,' and that discretion is not cabined by the 'heightened standards for reconsideration' governing final orders." *Id.* at 832 (quoting *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003)).

Here, the district court denied Austin's motion for reconsideration because the expert report "existed at the time he filed that Motion," and "Rule 59(e) demands more than this." This explanation evinces a clear reliance on the heightened standard of Rule 59(e) to deny Austin's motion for reconsideration. Had the district court correctly applied the more flexible Rule 54(b), it would have had the discretion to reconsider the motion for leave to file a surreply in light of both the newly filed expert report and Austin's equitable arguments, and would not have been constrained by whether the expert report previously existed. *See Lavespere*, 910 F.2d at 175. Because the district court abused its discretion, we vacate the portion of the district court order finding no material fact issue as to causation and remand for the district court to reconsider Austin's motion for reconsideration under the more flexible Rule 54(b). *Cf. Marlin v. Moody Nat'l Bank, N.A.*, 533 F.3d 374, 378 (5th Cir. 2008) (vacating sanctions that did not comply with Rule 11 and remanding the case for proceedings consistent with Rule 11); *United States v. Thibodeaux*, 663 F.2d 520, 522 (5th Cir. Nov. 1981) (vacating the denial of a motion to amend a magistrate order where the district court erroneously applied a deferential

appellate review standard and remanding for the district court to apply a less deferential standard); *see also Saint Annes*, 443 F. App'x at 831–32.

On remand, the district court should construe the procedural rules with a preference toward resolving the case on the merits and avoiding any dismissal based on a technicality.  *See* FED. R. CIV. P. 1 (requiring the Rules to be "construed, administered, and employed by the court . . . to secure the *just*, speedy, and inexpensive determination of every action and proceeding" (emphasis added)); *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 550 (2010) (noting that the Federal Rules of Civil Procedure express a general preference for "resolving disputes on their merits"); *Edwards v. Occidental Chem. Corp.*, 892 F.2d 1442, 1445 (9th Cir. 1990) ("[T]he 'principal function of procedural rules should be to serve as useful guides to help, not hinder, persons who have a legal right to bring their problems before the courts,' and 'decisions on the merits are not to be avoided on the basis of mere technicalities.'" (quoting *Schiavone v. Fortune,* 477 U.S. 21, 27 (1986))).  The district court should also weigh the interests of justice when deciding whether to permit a surreply and allow the expert report to supplement the record.  *See, e.g.*, *La Union del Pueblo Entero v. Fed. Emergency Mgmt. Agency (FEMA)*, No. 1:08-CV-487, 2016 WL 6915962, at *1 (S.D. Tex. Apr. 12, 2016) ("The Court finds that the interests of justice favor granting Plaintiffs leave to advance the arguments raised in their proposed surreply.").  Given both the expert report's legal significance as the only competent evidence supporting causation—which is Austin's only remaining hurdle to surviving summary judgment—and the lack of prejudice to Kroger—which had the report prior to filing its "no evidence" motion for summary judgment and could submit a surrebuttal—the interests of justice seem to weigh in favor of allowing the expert report to supplement the record. We do not decide that issue today, however, but instead leave it to the district court to make the determination in the first instance.

## IV.  CONCLUSION

The judgment of the district court is REVERSED IN PART, VACATED IN PART, and REMANDED for further proceedings consistent with this opinion.  Kroger had a duty to provide Austin with a necessary instrumentality for the safe performance of his work while he was performing "customary work" and the evidence created a genuine issue of material fact as to whether Spill Magic was a necessary instrumentality.  Therefore, we reverse the district court's judgment on these two issues.  Although the district court correctly determined that Kroger shifted the summary judgment burden to Austin on the element of causation, the district court nevertheless abused its discretion when it denied Austin's motion for reconsideration under Rule 59(e) instead of the more flexible Rule 54(b).  In doing so, the district court excluded significant evidence supporting causation.  Accordingly, we vacate this portion of the judgment and remand the case to the district court with instructions to (1) apply Rule 54(b) to the motion for reconsideration and (2) weigh the interests of justice when deciding whether to allow supplementation of the record with the earlier-produced but late-filed expert report.