# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
February 1, 2023

Lyle W. Cayce
Clerk

No. 22-20155

Valero Title Incorporated, *doing business as* Valero Title Company,

*Plaintiff—Appellee*,

*versus*

RLI Insurance Company,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CV-443

Before Elrod, Haynes, and Willett, *Circuit Judges*.

Per Curiam:*

This appeal arises from a denial of insurance coverage for a claim of loss due to a fraudulent routing number supplied to Plaintiff-Appellee Valero Title, Inc., an escrow agent. Valero filed this lawsuit after its insurer Defendant-Appellant RLI Insurance Company denied Valero's proof of loss claim, which RLI determined was not covered by the funds transfer fraud

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

endorsement in Valero's crime protection insurance policy. The district court disagreed and granted partial summary judgment to Valero. RLI now appeals the judgment of the district court. For the following reasons, we AFFIRM.

I

Valero purchased a crime-protection policy from RLI that included a funds transfer fraud endorsement providing that "we will pay for loss of funds resulting directly from a fraudulent instruction directing [*sic*] financial institution to transfer, pay or deliver funds from your transfer account. The relevant definition for "fraudulent instruction" is "[a] written instruction . . . issued by you, which was forged or altered by someone other than you without your knowledge or consent, or which purports to have been issued by you, but was in fact fraudulently issued without your knowledge or consent."

A Valero employee was discussing a loan payoff transaction over e-mail with a lender's employee when a fraudster posed as the lender's employee and sent the Valero employee fraudulent wiring instructions with a fraudulent routing number. Because the Valero employee did not recognize that these instructions were fraudulent, she instructed Valero's bank to wire $250,945.31 to the fraudster. When Valero learned of the loss, it submitted a proof of loss claim to RLI. RLI determined that the loss was not covered by the funds transfer fraud endorsement.

Based on the denial of coverage, Valero sued RLI. The parties filed cross motions for summary judgment, RLI seeking summary judgment on all of Valero's claims and Valero seeking a declaration that its claimed loss was covered and that RLI breached the policy by denying coverage. The only issue before the district court was the interpretation of the insurance policy; the district court properly assumed the facts pleaded by Valero were true. The district court granted Valero's partial motion for summary judgment and

No. 22-20155

denied RLI's motion, holding that Valero's loss was covered under the policy. The parties stipulated to the amount of attorney's fees and agreed to the dismissal of Valero's remaining extracontractual claims, which the court accepted to make the judgment final and appealable. RLI timely appealed.

## II

We review a district court's grant of a motion for summary judgment *de novo*. *Wallace v. Performance Contractors, Inc.*, 57 F.4th 209, 217 (5th Cir. 2023). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 328 (5th Cir. 2017) (quotation omitted). We view the evidence in the light most favorable to the non-movant. *Id.* Under Texas law, the "interpretation of an insurance policy is a question of law for the court to determine." *Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 858 (5th Cir. 2014).

## III

RLI appeals the district court's interpretation of Valero's insurance policy funds transfer fraud endorsement. RLI argues that the district court misinterpreted the plain language of the policy, premised its analysis on invalid assumptions, improperly read additional language into the policy, and that RLI's interpretation instead gives effect to all policy provisions.

Under Texas law, insurance policies are construed according to ordinary contract principles. *Balfour Beatty Constr., L.L.C. v. Liberty Mut. Fire Ins. Co.*, 968 F.3d 504, 509 (5th Cir. 2020) (citing *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 747 (Tex. 2006)); *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 309 (5th Cir. 2010). Courts look to the plain language

of the policy, examining the entire agreement and seeking to harmonize and give effect to all provisions so that none will be rendered meaningless. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003).

The relevant provision of the policy at issue here, the funds transfer fraud endorsement, provides for reimbursements of funds lost to certain forms of fraud:

> We will pay for loss of funds resulting directly from a fraudulent instruction directing [*sic*] financial institution to transfer, pay or deliver funds from your transfer account.

The endorsement contains three definitions for "fraudulent instruction," but only the second is relevant here:

> A written instruction . . . issued by you, which was forged or altered by someone other than you without your knowledge or consent, or which purports to have been issued by you, but was in fact fraudulently issued without your knowledge or consent

All parties agree that this definition creates two distinct coverage scenarios, which the district court labeled "Clause A" and "Clause B." The parties' dispute involves Clause A: "a written instruction . . . issued by you, which was forged or altered by someone other than you without your knowledge or consent."

RLI argues that because the instruction here was issued as it was authorized and approved by Valero, it cannot be "a written instruction . . . issued by you, which was forged or altered by someone other than you without your knowledge or consent." The district court correctly held that the only interpretation of Clause A that does not render Clause B meaningless is one in which a written instruction is forged or altered by someone other than the insured without the insured's knowledge or consent

prior to being issued by the insured. RLI's construction cannot be harmonized with the rest of the policy because it makes Clause B redundant.

RLI argues that the district court ignored plausible scenarios under which Clause A could apply without making Clause B redundant. RLI proposes that if Valero had forwarded the exact e-mail forged by the fraudster (posing as the lender) to Valero's bank, instead of issuing its own wiring instructions, Clause A would apply. However, in this circumstance, the instruction would be issued by the lender, not Valero. The practical difference between RLI's scenario and what occurred here is also unclear. Here, the instruction Valero issued to its bank included the name of the recipient institution, the routing number, the recipient account numbers, the account name, the payment date, and the total amount of payment. It was the same instruction Valero received from the fraudster posing as the lender. Unknown to Valero, the instruction was not the same as the instruction provided by the lender; it was altered to include different recipient account information. Thus, when Valero issued the instruction to its bank, it was a fraudulent instruction that was "forged or altered by someone other than [Valero] without [Valero's] knowledge or consent."

RLI also hypothesizes that it would be possible for Clause A to apply if Valero's instruction were received by the recipient bank and an employee of the bank sent the funds using a different routing or account number. However, in this scenario the loss would not be the "direct result of a fraudulent instruction . . . issued by [Valero]," it would be the result of a subsequent fraud contrary to the instruction issued by the Valero. Similarly, if a wire instruction were issued by Valero, intercepted on the way to the bank, forged or altered, and then received by the bank in its forged or altered state, the wiring instruction issued by the Valero would not be the same instruction received and/or processed by the bank. Instead, the bank in the hypotheticals proposed by RLI would be effectuating a different wiring

No. 22-20155

instruction "which purports to have been issued by [the insured], but was in fact fraudulently issued without [the insured's] knowledge or consent." These hypotheticals construe Clause A to have the same meaning as Clause B and render some or all of the terms Clause A and Clause B meaningless. *See Tesoro Ref. & Mktg. Co., L.L.C. v. Nat'l Union Fire Ins. Co. of Pitt., Pa.*, 833 F.3d 470, 474 (5th Cir. 2016); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003).

As the district court correctly held, the only interpretation of Clause A that does not render Clause B meaningless is one in which a written instruction is forged or altered by someone other than the insured without the insured's knowledge or consent prior to being issued by the insured.  The district court correctly applied this interpretation and found that coverage was trigged under the funds transfer fraud endorsement for Valero's claimed loss.

*        *        *

Accordingly, we AFFIRM.