# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
November 17, 2021

Lyle W. Cayce
Clerk

No. 20-30048

Darvin Castro Santos,

*Plaintiff—Appellant*,

*versus*

Craig White, *Major*; John Wells, *Captain*;
Allen Verret, *Colonel*; Ashley Martell, *Lieutenant*,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Middle District of Louisiana
No. 3:16-CV-598

Before Smith, Stewart, and Willett, *Circuit Judges*.
Jerry E. Smith, *Circuit Judge*:

Darvin Santos, an inmate at the Elayn Hunt Correctional Center in Louisiana, sued prison officials under 42 U.S.C. § 1983, asserting that they had used excessive force against him in violation of his constitutional rights. The district court granted summary judgment for the defendants, determining that Santos's claims were barred by *Heck v. Humphrey,* 512 U.S. 477 (1994). In doing so, the court relied on prison disciplinary reports that contradicted Santos's allegations.

Santos appeals both the district court's determination based on *Heck*

and its consideration of the disciplinary reports, which he claims are hearsay. For the reasons given below, we affirm the district court's decision to admit the reports but vacate and remand for further proceedings with regard to the application of *Heck*.

## I.

Santos was walking to his cell when, he alleges, he witnessed six prison officers beating another inmate. Santos intervened, imploring the officers to stop the beating. The officers, including Colonel Allen Verret, Major Craig White, and Lieutenant Ashley Martell, told him to mind his business before ultimately turning their attention to him as the focus of their beating. He claims that he was knocked to the ground, hit, kicked, choked, handcuffed and dragged in a manner that caused his head to hit poles in the walkway. He was then placed in a shower cell, where Captain John Wells sprayed him in the face with a chemical agent, ordered him to strip naked, and sprayed him again with the chemical agent in the genitals and anus. After prohibiting Santos from taking a shower to wash off the chemical, the officers ordered him to put on his jumpsuit and escorted him to another area, where Wells cut Santos with a knife and threatened to kill him. Santos was ultimately transferred to a medical center where, he alleges, he was denied any real medical attention.

This version of events is contradicted by the findings of prison officials who investigated. According to their narrative, Santos approached the officers in a threatening manner and then physically attacked them. Despite initially being restrained, he remained uncooperative and violent, at one point striking Wells hard enough to break his dentures. His actions necessitated the use of a chemical agent to gain compliance, though after it was used he ceased resisting. Based on the incident, a prison disciplinary board concluded that Santos was guilty of nine violations: three "Defiance" violations, four "Aggravated Disobedience" violations, one "Property Destruction" viola-

tion, and one "Unauthorized Area" violation.  He was disciplined accordingly, including by the forfeiture of 180 days of good-time credit.

## II.

Having exhausted his administrative remedies within the prison system,  Santos sued White, Wells, Verret, and Martell under § 1983, claiming that they had subjected him to corporal punishment and excessive force while seizing and detaining him, thus violating his Fourth, Eighth, and Fourteenth Amendment rights.  He sought money damages.

The defendants moved for summary judgment, averring that the incompatibility between Santos's claims and the findings of the disciplinary board meant that the suit was barred by *Heck*.  Santos opposed the motion and moved to strike the investigative and disciplinary reports as hearsay.

Granting summary judgment for the defendants, the court first concluded that, because Santos's disciplinary violations resulted in the loss of good-time credits, those findings were "convictions" for purposes of the *Heck* bar.  It considered the contradictions between Santos's allegations and the reports that had accompanied his disciplinary sanctions and concluded that a ruling in Santos's favor "would directly challenge the validity of his convictions."  *Heck* thus barred the consideration of Santos's claims in a § 1983 suit.

The district court also denied Santos's motion to strike the prison officers' reports.  The court reasoned that those reports were not offered for the truth of their contents but rather to provide a record of the disciplinary board's findings.

## III.

On appeal, Santos challenges the summary judgment with regard to his Eighth Amendment claims.  He contends that his claims are not barred by *Heck* and that the court erred by not excluding the prison disciplinary

reports as hearsay. Summary judgment is a determination of law that we review *de novo*. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 328 (5th Cir. 2017) (per curiam). In doing so, we view all facts in the light most favorable to the non-moving party, here Santos, and draw all reasonable inferences in his favor. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). We conclude that the district court was correct in its decision to consider the disciplinary reports, but we vacate and remand its determination that Santos's claims were *Heck*-barred.

## IV.

The application of *Heck* to § 1983 claims by prisoners is a subject that we examine today in No. 20-30218, *Gray v. White*, and a fuller discussion can be found in Part IV of that opinion. Here, we only briefly summarize the governing law before applying it to Santos's claims.

Section 1983 creates a cause of action against individuals who, under color of state law, deprive the plaintiff of his constitutional rights. To decide an Eighth Amendment claim based on excessive force, a court must determine "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillan*, 503 U.S. 1, 7 (1992). But under *Heck*, a prisoner may not "seek[] damages in a § 1983 suit" if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 487. The fundamental rationale behind the *Heck* bar is that "[c]hallenges to the *validity* of any confinement or to particulars affecting its *duration* are the province of habeas corpus," whereas "requests for relief turning on *circumstances of confinement* may be presented in a § 1983 action." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam) (emphasis added).

Because *Heck* applies to the duration of confinement, it applies not just to criminal convictions but also to prison disciplinary rulings that "result[] in a change to the prisoner's sentence, including the loss of good-time

credits." *Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998) (en banc). *Heck* therefore bars claims that would, if accepted, "negate" a prison disciplinary finding that had resulted in the loss of good-time credits. *Bourne v. Gunnels*, 921 F.3d 484, 491 (5th Cir. 2019).

Meanwhile, *Heck* is not "implicated by a prisoner's challenge that threatens no consequence for his conviction or the duration of his sentence." *Muhammad*, 540 U.S. at 751. Rather, a claim is barred only if granting it "requires negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction." *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008). The resulting inquiry is "fact-intensive" and dependent on the precise nature of the disciplinary offense. *Aucoin v. Cupil*, 958 F.3d 379, 382 (5th Cir.) (quoting *Bush*, 513 F.3d at 497), *cert. denied*, 141 S. Ct. 567 (2020).

It is unclear, from the record, whether any of Santos's claims are barred by *Heck*. In his disciplinary proceeding, Santos was found guilty of nine rules violations: three "Defiance" violations, four "Aggravated Disobedience" violations, one "Property Destruction" violation, and one "Unauthorized Area" violation. Though the disciplinary reports list factual findings, the elements required to find a prisoner guilty of those violations do not appear anywhere in the record. It is thus impossible to determine which facts were *necessary* to the disciplinary board's conclusions. It may be that the elements of, for instance, aggravated disobedience would be logically incompatible with some of Santos's claims of excessive force, but the record does not currently permit that inference.

Furthermore, not all of the disciplinary board's findings implicate *Heck*. The board imposed a forfeiture of 180 days of good time for one count each of aggravated disobedience, defiance, and property destruction, all arising from Santos's assault on Wells in the Fox-6 D-Tier area of the prison; his other violations, including all of those in the shower, resulted in sanctions

such as loss of canteen and phone privileges. Disciplinary sanctions of that type bear on the "circumstances of confinement," rather than on that confinement's "validity" or "duration," and are thus not barred by *Heck*. *Muhammad*, 540 U.S. at 750. Moreover, the disciplinary board imposed no sanctions at all on Santos for actions after the administration of the chemical agent in the shower, and it noted that he "complied with orders" after that point. Thus, *Heck* does not bar Santos's claims from that point onward.

It is not sufficient to deem Santos's claims to be "intertwined" with his loss of good-time credits. Rather, in applying *Heck*, a court must bar only those claims that are "necessarily at odds with" the disciplinary rulings, and only with those rulings that resulted in the loss of good time credits. *Aucoin*, 958 F.3d at 383. The defendants have thus not met their burden for summary judgment on the current record. Whether the board's findings related to the assault on Wells bar the corresponding claims by Santos must be determined by a fact-specific analysis informed by the elements necessary to establish those violations.

V.

Santos also appeals the ruling on the defendants' exhibits, contending that they were inadmissible hearsay. To be considered on summary judgment, materials must be of a type that can be "presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2); *see also LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016). Evidentiary rulings by trial courts are affirmed unless they constitute abuses of discretion. *See, e.g.*, *United States v. Pruett*, 681 F.3d 232, 243 (5th Cir. 2012) (per curiam).

A statement is hearsay if it is not made while testifying and a party "offer[s it] in evidence to prove the truth of the matter asserted" in the statement. FED. R. EVID. 801(c). The reports submitted by the defendants were offered to demonstrate that the disciplinary board had found Santos

No. 20-30048

guilty of various offenses, not to prove the truth of the matter, that is, that he actually had committed the offenses. As with criminal convictions, the *Heck* bar does not, in theory, assume that the prison disciplinary board's determinations were true, but only that they cannot be challenged through § 1983. *Cf. Heck*, 512 U.S. at 487 (noting that § 1983 may be used to challenge a conviction or sentence that "has already been invalidated"). The district court did not err in considering the exhibits.

\*\*\*

In sum, although the district court was correct in considering the documents, Santos's claims cannot be dismissed as *Heck*-barred without further development of the record to determine which of his allegations would be necessarily incompatible with the prison board's ruling that deprived him of good time credits. In light of these conclusions, the summary judgment is VACATED and REMANDED. We place no limitation on the matters that the court can address and decide on remand. Nor do we suggest how the court should rule on which claims are precluded by *Heck*.

No. 20-30048

DON R. WILLETT, *Circuit Judge*, concurring in the judgment.

This case involves an all-too-common set of facts: Appellant (a prisoner) claims that Appellees (prison officers) spontaneously and unlawfully abused him. Appellees, on the other hand, insist they used lawful force to control Appellant's misbehavior. Though the majority opinion reaches the correct conclusion—the district court erred in its unqualified dismissal under *Heck*—I write to emphasize two points of departure.

I

First, my colleagues punt on *Heck* when a hand-off is warranted. Could the record have more information? Absolutely. Do we *need* more? No. *Heck* does not categorically compel an element-by-element inquiry, and the majority opinion needlessly complicates things by concluding that the record precludes analysis.

This case is *Aucoin* redux.[1] Appellant maintains he was subject to unprovoked, unlawful violence at every stage of the encounter.[2] But if true, he "cannot be guilty of [the offenses for which he lost good-time credit]—in direct conflict with his disciplinary conviction."[3] So we need not dwell on the component elements of Appellant's conviction to determine that most of his claims are incompatible with the disciplinary board's findings.

Take the claims arising from the pre-shower salvo. The majority implies that some of these claims may not be *Heck* barred.[4] Sure, *Heck* is not "implicated by a prisoner's challenge that threatens no consequence for . . .

---

[1] *See Aucoin v. Cupil*, 958 F.3d 379 (5th Cir. 2020).

[2] *Cf. id.* at 383 (noting plaintiff-appellant "challenge[d] the conviction by maintaining his innocence in the events that led up to his disciplinary conviction").

[3] *Id.*

[4] *Ante* at 5–6.

the duration of his sentence."[5] But all of Appellant's pre-shower claims turn on the same narrative: He was attacked without provocation. This is fundamentally inconsistent with the officers' account, which prompted Appellant's loss of good-time credit for property destruction, aggravated disobedience, and defiance. Most of Appellant's suit thereby "challenges the factual determination that underlies his conviction[s],"[6] meaning most of his claims fail.

But most does not mean all. A portion of Appellant's suit alleged violence unrelated to any supposed need to gain control. Appellant pleaded an excessive-force claim against Captain Wells for ordering him to "spread his butt cheeks" and spraying him "in the anus with pe[p]per spray." Appellant also pleaded that Captain Wells threatened and cut him with a knife after he was "no longer resisting or attempting to flee or, otherwise, commit any crime." These are not trivial details. Neither the incident report nor any other summary-judgment evidence provides an iota of justification for this alleged force. We are thus left with no circumstance where these claims, if proven true, would conflict with Appellant's disciplinary conviction—let alone those portions that impacted the duration of his confinement.[7] This is not to say that the elements underlying an

---

[5] *Muhammad v. Close*, 540 U.S. 749, 750–51 (2004) (per curiam) (observing that punishments of this type bear on the "circumstances of confinement" rather than its "validity" or "duration"); *see also, e.g., Bourne v. Gunnels*, 921 F.3d 484, 491 (5th Cir. 2019).

[6] *Id.*

[7] As the majority correctly observes, Appellant was found guilty of nine prison rule violations, yet only three (property destruction, aggravated disobedience, and defiance—each arising from the initial salvo) resulted in the loss of good-time credit. *Ante* at 6.

administrative offense are categorically irrelevant under *Heck*.[8] But no case, until today, suggests this information is an analytical prerequisite.[9]

I nonetheless join the judgment because, as was the case in *Aucoin*, "the district court erred in dismissing all of [Appellant's] claims under *Heck*."[10]

## II

I must also depart from the majority opinion's hearsay analysis, though my colleagues again reach the correct conclusion. No one seriously disputes that "[t]he reports … were offered to demonstrate that the disciplinary board had found Santos guilty of various offenses, not to prove … that he actually had committed the offenses."[11] But this does little more than invite the question presented: Why is this not hearsay?

A prison disciplinary report is an out-of-court statement,[12] and the report here was offered by the Appellees "to provide a record of Plaintiff's prison disciplinary convictions" and thus "establish … that the *Heck* doctrine bars [relief]." This, at bottom, points to the truth of the matter asserted in the disciplinary report: Appellant was found guilty of (and punished for) his administrative offenses. Needless to say, the disciplinary

---

[8] *See, e.g.*, *Ballard v. Burton*, 444 F.3d 391, 397–99 (5th Cir. 2006) (analyzing elements to determine whether the plaintiff's prior conviction was fundamentally inconsistent with his claim of excessive force).

[9] The majority's belief otherwise casts a jaundiced eye on *Aucoin*, which was decided just last year and offered nary a mention of the elements underlying the administrative offenses at issue there. *See Aucoin*, 958 F.3d at 383–84. But our silence was understandable: The appellant claimed total innocence, which was "necessarily inconsistent with the validity of the [administrative] conviction." *Id.* at 383.

[10] *Id.* at 383–84.

[11] *Ante* at 7.

[12] *See* FED. R. EVID. 801(a) (defining "statement"); *cf., e.g.*, *United States v. Jimenez*, 275 F. App'x 433, 437 n.1 (5th Cir. 2008) ("Police reports are generally excludable as hearsay.").

No. 20-30048

report would be irrelevant if it did not accurately communicate the board's findings. The majority opinion nonetheless suggests that there is only one way to offer these statements for their truth: by claiming Appellant *actually committed* the offenses. I disagree. The truth asserted here is that Appellant was found guilty and lost good-time credit—not whether this outcome was justified.

But we mustn't lose the forest for the trees. In the end, the majority opinion correctly observes that evidence need not be in admissible form at summary judgment.[13] I would thus hold that the defendants could have later admitted the challenged evidence under any number of theories.[14] This low bar does not compel reversal.

*        *        *

It is believed that Solon, one of the Seven Sages of Greece, once observed that justice would not come to Athens until the unaggrieved were as indignant as the oppressed. Whether this case merits indignance is not before us.[15] But we are called to determine whether Appellant's claim is

---

[13] *See, e.g.*, *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016); *accord* FED. R. CIV. P. 56(c)(2).

[14] *Cf., e.g.*, *Autin v. La. Dep't of Pub. Safety & Corr.*, No. 20-CV-1214, 2021 WL 1210471, at *5 (E.D. La. Mar. 31, 2021) (*Heck*-bar case, admitting disciplinary reports as public records); *Aucoin v. Cupil*, No. 16-00373-BAJ-RLB, 2018 WL 6332831, at *1 n.2 (M.D. La. Dec. 4, 2018) (*Heck*-bar case, judicial notice of disciplinary convictions), *rev'd and remanded on other grounds*, 958 F.3d 379 (5th Cir. 2020).

[15] If faced with this question, perhaps we might pause to note Captain Wells's apparent familiarity with the impact of *Heck* on civil rights claims. *See, e.g.*, *Jacobs v. Wells*, 16-CV-00865-BAJ-EWD, 2019 WL 4170185, at *1 (M.D. La. Sept. 3, 2019) (granting *Heck* dismissal, § 1983 claim against Captain Wells for unlawful use of chemical agents and force resulting in a broken ankle and leg); *Johnson v. Sharp*, No. 05-1244-A, 2007 WL 580667, at *2 (M.D. La. Feb. 13, 2007) (granting *Heck* dismissal, § 1983 claim against then-Sergeant Wells for an unprovoked, "vicious beating"); *see also, e.g.*, *Gray v. White*, ___ F.4th ___ (5th Cir. 2021) (involving Captain Wells, again).

beyond the reach of § 1983. It is not. Appellant has the right to present his case to a jury, and the district court's belief otherwise was error.