# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
April 19, 2023

Lyle W. Cayce
Clerk

No. 21-30678

_____

TROY AUTIN,

*Plaintiff—Appellee*,

*versus*

ROBERT GOINGS, *Sergeant*; LANCE WALLACE, *Sergeant*; JONATHAN STRINGER, *Lieutenant*,

*Defendants—Appellants*.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:20-CV-1214

_____

Before WIENER, STEWART, and ENGELHARDT, *Circuit Judges*.

PER CURIAM:[*]

Troy Autin, an inmate at Rayburn Correctional Center ("RCC"), filed this 42 U.S.C. § 1983 suit against several prison officers claiming that they violated his Eighth Amendment rights during two incidents that happened during his incarceration. The officers moved for summary judgment, arguing that the suit was barred by *Heck v. Humphrey* and that they

_____

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

were entitled to qualified immunity. 512 U.S. 477 (1994). The district court denied their motion. The officers appealed. For the following reasons, we REVERSE the district court's order denying the officers' motion for summary judgment and VACATE the district court's amended order.

## I. Background

### A. Use of Force Incidents

In his complaint, Autin alleged that two separate use of force incidents took place at RCC involving Sergeant Robert Goings, Lieutenant Lance Wallace, and Lieutenant Jonathan Stringer (collectively "the officers"). As to the first, he alleged that Goings escorted him into the Wind Unit Lieutenant's Office which is an office, without cameras. Goings told Autin that he would be strip-searched unless he gave him any drugs he had. Autin gave Goings the pills in his sock and turned to leave the office. Goings then allegedly lost his temper and put Autin "in a choke hold and choked him and told him he was going to kill him." Goings then "viciously beat" Autin. Autin alleged that Stringer entered the room and was informed by Goings that Autin had tried to swallow something. Stringer allegedly joined the attack. Goings then handcuffed Autin and escorted him from the office to the infirmary and back to his unit via a corridor called the Sun Unit Walk. Autin alleged that the second use of force incident took place at this time.

While being escorted back to his cell through the Sun Unit Walk, Stringer allegedly noticed blood on his pants, became angry, threw Autin to the ground, and began to hit him. Wallace then entered the room and began kicking Autin in the ribs. Both Wallace and Stringer "viciously stomped on" Autin, causing injuries. Autin alleged that he sustained broken ribs, neck damage, loss of blood, two black eyes, facial swelling, organ failure, and he was unable to either walk or defecate. It was later determined that Autin had not swallowed anything.

### B. Disciplinary Hearing

With respect to the first incident involving Goings and Stringer, Autin received a disciplinary report which claimed that he had contraband, hit and struggled with corrections officers, and disobeyed their orders. Autin also received a disciplinary report for the second incident involving Stringer and Wallace which stated that Autin struggled with corrections officers and disobeyed orders. Autin's position, as stated in his various complaints and deposition, is that he was factually innocent of the charges. The prison disciplinary board held separate hearings regarding the disciplinary reports and found Autin guilty of all charged rule violations. As a result of the first incident, Autin forfeited 30 days of good-time, was transferred to extended lockdown for 90 days, and was ordered to pay restitution. He forfeited 120 days of good-time for the second incident.

### C. District Court Proceedings

Autin filed a civil rights suit in Louisiana state court against RCC, Goings, and Wallace, claiming that the officers violated his Eighth Amendment rights through the use of excessive force during the two above-described incidents. Autin subsequently amended his complaint, adding claims against Stringer. The officers removed the case to the United States District Court for the Eastern District of Louisiana and asserted qualified immunity as a defense.

In November 2020, Goings and Wallace moved for summary judgment on the grounds that Autin's claims were barred by *Heck*. On March 31, 2021, the district court denied Goings and Wallace's motion for summary judgment ("March order"), concluding that Autin's claims were not barred by *Heck*. In support of its ruling, the district court reasoned that Autin "adequately alleged a claim for excessive force that occurred after he

was restrained during both incidents."   Goings and Wallace did not immediately appeal that order.

Instead, Goings, Wallace, and Stringer moved for summary judgment for a second time in August 2021, contending that Autin's claims were *Heck*-barred and that they were entitled to qualified immunity.  On September 30, 2021, the district court denied the officers' second summary judgment motion ("September order").  It construed their second motion for summary judgment as a motion for reconsideration of its March 31, 2021 order and did not revisit the merits of the issues related to *Heck* or address the issue of qualified immunity.  The officers then appealed the *Heck* and qualified immunity rulings in the March 31 and September 30 orders.  On November 17, 2021, the district court entered an amended order specifically addressing the merits of the *Heck*-bar as to Stringer and the issue of qualified immunity as to all three officers ("November order").  The officers timely amended their notice of appeal to include the November order. Fed. R. App. P.4 (a)(1)(A).

## II.    Standard of Review

We review a denial of summary judgment de novo. *See Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  We review a denial of a motion to reconsider for abuse of discretion. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 329 (5th Cir. 2017).  "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Id.* (internal citation omitted).

No. 21-30678

## III.  Discussion

### A.  Jurisdiction

We begin with jurisdiction.  There are three orders relevant to this appeal: the March, September, and November orders.  The first is the March order denying Goings and Wallace's motion for summary judgment which only addressed whether Autin's claims were *Heck*-barred. While that order was immediately appealable, Goings and Wallace did not timely appeal this order, so we cannot review it.  *See* FED. R. APP. P. 4(a)(1)(A).

After Autin amended his complaint to add Stringer, all three officers moved again for summary judgment on the ground that Autin's claims were *Heck*-barred, and they raised qualified immunity as an affirmative defense. The district court construed this as a motion for reconsideration and, in its September order, held that the claims were not *Heck*-barred but was silent as to qualified immunity.  The officers timely appealed the September order. Finally, the district court entered the November order, which was an amended order, where it provided more reasoning and discussed qualified immunity for the first time. The officers timely appealed the November order as well.

The collateral order doctrine vests us with jurisdiction over the officers' appeal of the September order for two reasons. First, the district court declined to rule on qualified immunity in its September order when it was so obligated.  *See Armstrong v. Ashley*, 918 F.3d 419, 422 (5th Cir. 2019); *see also Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021) (per curiam) (holding that the district court's failure to decide qualified immunity "at the earliest possible stage of the litigation" is "immediately appealable"). Second, the September order rejected the officers' argument that the case was *Heck*-barred.  *Sappington v. Bartee*, 195 F.3d 234, 236 (5th Cir. 1999); *see also Poole v. City of Shreveport*, 13 F.4th 420, 426 (5th Cir. 2021) ("[A] district

5

court's denial of summary judgment is reviewable and subject to reversal if the claim is barred under *Heck*.") (quotation and citation omitted). Defendants raised qualified immunity in their second summary judgment motion, but the district court did not address the issue until it rendered its November order when it no longer had jurisdiction. *See Alice L. v. Dusek*, 492 F.3d 563, 564 (5th Cir. 2007) (holding that "[a] notice of appeal from an interlocutory order does not produce a complete divestiture of the district court's jurisdiction over the case," but it does divest it "of jurisdiction over those aspects of the case on appeal").

We now turn to the merits of the officers' second motion for summary judgment.

### B. *Application of Heck*

Under *Heck*, a plaintiff is barred from bringing a § 1983 suit for damages if success on the claim would necessarily "imply the invalidity of his conviction or sentence." 512 U.S. at 487. A plaintiff may only bring a § 1983 claim for damages if the prior conviction is "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486–87.

Autin argues that the Supreme Court did not intend for *Heck* to apply to prison disciplinary hearings. He further argues that the *Heck* line of cases does not apply to a § 1983 action which does not seek a judgment at odds with the prisoner's conviction or sentence to be served. *See Muhammad v. Close*, 540 U.S. 749, 750–52 (2004)). "Thus, where the remedy did not set aside a disciplinary hearing with restoration of good-time credits, the *Edwards*

line of cases was not implicated."[1] Autin contends that he did not allege that the "disciplinary charges against [him] resulted in a forfeiture of any good-time credits" or "otherwise affect[ed] the length of [his] prison sentence." He avers that because he is not seeking to reduce his sentence, there is no legal or factual basis to apply *Heck* to this case and urges this court to affirm the district court's denial of summary judgment.

The officers argue the opposite. They contend that they are entitled to qualified immunity from Autin's Eighth Amendment excessive force claims because those claims are *Heck*-barred. They aver that Autin's Eighth Amendment claims have not yet accrued and, therefore, he fails to state a claim for the violation of a constitutional right. Citing *Edwards*, the officers argue that even though *Heck* arose out of a criminal prosecution, the Supreme Court extended the doctrine to cover prison disciplinary actions. *Edwards v. Edwards*, 520 U.S. 641, 648 (1997) (holding that a claim for damages that implied the invalidity of a disciplinary hearing conviction [was] not cognizable under § 1983). They point out that this court has routinely "held that the *Heck* doctrine applies to prison disciplinary actions where the inmate lost good time." *See Clark v. Stalder,* 154 F.3d 186, 189 (5th Cir. 1998) (en banc) (holding a prisoner cannot bring a § 1983 suit that implies the invalidity of a "conviction," including "the finding of guilt on the disciplinary charge" in a prison disciplinary proceeding).

We are persuaded by the officers' argument on this issue. This court has repeatedly held that "[f]or purposes of *Heck*, a conviction . . . includes a ruling in a prison disciplinary proceeding that results in a change to the prisoner's sentence, including the loss of good-time credits." *Gray v. White*, 18 F.4th 463, 467 (5th Cir. 2021) (quotation and citation omitted).

---

[1] *Edwards v. Balisok*, 520 U.S. 641 (1997).

"Therefore, *Heck* precludes § 1983 litigation in the prison-disciplinary-proceeding context where it would 'negate [the prisoner's] disciplinary conviction' if negating that conviction would 'affect[] the duration of his sentence by restoring his good-time credits.'" *Id.* (quoting *Bourne v. Gunnels*, 921 F.3d 484, 491 (5th Cir. 2019)). "Whether the plaintiff in fact seeks the restoration of good-time credits, rather than another remedy such as damages, is immaterial." *Id.* (citing *Aucoin v. Cupil,* 958 F.3d 379, 383 (5th Cir. 2020)).

Our decision in *Santos* is also instructive. *See Santos v. White*, 18 F.4th 472 (5th Cir. 2021), cert. denied, 213 L. Ed. 2d 1040, 142 S. Ct. 2817 (2022). There, we first concluded that, because the plaintiff's disciplinary violations resulted in the loss of good-time credits, those findings were "convictions" for purposes of *Heck*. *Id.* at 475. We "considered the contradictions between [the plaintiff's] allegations and the reports that had accompanied [his] disciplinary sanctions and concluded that a ruling in his favor 'would directly challenge the validity of his convictions.'" *Id.* (quoting *Santos v. White*, No. 16-00598, 2020 WL 86445, at *3 (M.D. La. Jan. 7, 2020)). *Heck* thus barred the consideration of some of the plaintiff's claims in his § 1983 suit. *Id.* We also determined that there was confusion as to which facts applied to the convictions, and because there were different remedies sought, it was not sufficient to deem all of the plaintiff's claims "'intertwined' with his loss of good-time credits." *Id.* at 476. Rather, in applying *Heck*, we reasoned that "a court must bar only those claims that are 'necessarily at odds with' the disciplinary rulings, and only with those rulings that resulted in the loss of good-time credits." *Id.* at 476–77 (citing *Aucoin*, 958 F.3d at 383). Consequently, we held that a fact-specific analysis informed by the elements was necessary to establish those violations. *Id.*

Here, Autin's claims are *Heck*-barred because any judgment in his favor would necessarily imply the invalidity of the deprivation of his good-

time credits. *Id.* The basis for the loss of his good-time credits are the disciplinary convictions being challenged. *See Edwards,* 520 U.S. at 646. To prevail in his § 1983 suit, Autin would be required to negate his conviction which would result in the reinstatement of good-time credits, which in turn, is prohibited under *Heck. See Bourne*, 921 F.3d at 491.

Although Autin does not outright request the reinstatement of his good-time credits, by maintaining his complete innocence as to all charges, he directly challenges an element of each criminal offense and proof of fact. *See Aucoin*, 958 F.3d at 383 (holding that maintaining innocence was "necessarily inconsistent with the validity of the [administrative] conviction."). Unlike in *Santos*, there is no confusion as to which facts apply to the convictions. Each of Autin's alleged excessive force claims directly relate to his charges that underly his disciplinary convictions, thus intertwining his § 1983 claim with his loss of good-time credits. *Santos,* 18 F.4th at 476. A judgment in his favor would mean that the elements of the charges against him were not satisfied. [2] Furthermore, all of Autin's claims implicate *Heck* because they challenge the validity of his conviction rather than the circumstances or conditions of his confinement. *See Id.* at 476.

In sum, the district court abused its discretion by holding that Autin's claims were not *Heck*-barred. *See Austin*, 864 F.3d at 329 (citing *United States v. Yanez Sosa*, 513 F.3d 194, 200 (5th Cir. 2008) (holding that "[a] trial court abuses its discretion when its ruling is based on an erroneous view of the

---

[2] Neither *Aucoin v. Cupil*, 958 F.3d 379, 384 (5th Cir. 2020), nor *Bush v. Strain*, 513 F.3d 492, 498–99 (5th Cir. 2008), call for a different result. In those cases, the plaintiffs "surrendered" before the officer exercised force, and the force was "discrete" from the plaintiffs' conduct that resulted in the sentence. *Aucoin*, 958 F.3d at 383–84; *see also Bush*, 513 F.3d at 497–98. Thus, we held that the basis of the plaintiffs' convictions was "temporally and conceptually distinct from the excessive force claims." *Aucoin*, 958 F.3d at 384 (quoting *Bush*, 513 F.3d at 498).

law."). Moreover, because *Heck* plainly requires dismissal of Autin's claims, we need not reach the question of qualified immunity.

Finally, with respect to the November order, we note that the district court entered it after the officers filed their notice of appeal. But the district court was without jurisdiction to do so because the order purported to decide "aspects of the case on appeal"—i.e., the qualified immunity and *Heck* issues. *Alice*, 492 F.3d at 564. Consequently, we vacate the district court's November order.

## IV. Conclusion

For the foregoing reasons, we REVERSE its September 30, 2021 order denying the officers' second motion for summary judgment and VACATE its November 17, 2021 amended order.