# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 17, 2021

Lyle W. Cayce
Clerk

No. 20-30218

Timothy Gray,

*Plaintiff—Appellant*,

*versus*

Craig White, *Major*; John Wells, *Captain*;
Michelle Sullivan, *Lieutenant*; Lindell Slater, *Lieutenant*,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Middle District of Louisiana
No. 3:16-CV-689

---

Before Smith, Stewart, and Willett, *Circuit Judges*.

Jerry E. Smith, *Circuit Judge*:

Timothy Gray, an inmate at the Elayn Hunt Correctional Center in Louisiana, sued prison officials under 42 U.S.C. § 1983, asserting that they had used excessive force against him in violation of his constitutional rights. The district court granted summary judgment for the defendants, determining that one set of Gray's claims is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and another set is improper because Gray failed to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e.

Gray appeals both determinations.  For the reasons given below, we affirm in part, vacate in part, and remand for further proceedings.

## I.

Gray was in his cell when, he alleges, Captain John Wells approached him and began verbally to antagonize him.  Upon entering the cell, Wells and Major Craig White attacked Gray without provocation, pulling him from his bunk and beating him.  Gray was taken to a shower, where, despite complying with all orders, he was sprayed in the face and head with a chemical agent.  He was further ordered not to turn the shower on and rinse the chemical away.  He then passed out for some time.  Upon coming to, he was placed in full restraints and dragged to a transportation van.  Along the way, two other officers, Lieutenant Michelle Sullivan and Major Lindell Slater, continued to beat him.  As a result of the altercation, Gray suffered injuries, including a broken nose and a bruised kidney.

These allegations are contradicted by the disciplinary reports prepared by prison officers.  According to those reports, Wells approached Gray's cell for a targeted search.  It was apparent to the officers that Gray was intoxicated, because there was vomit on the floor, toilet, and sink, and Gray failed to answer questions directly.  The correctional officers moved Gray to the shower area, where he refused direct verbal orders to come to the door to have his restraints removed and to be searched.  Gray failed to comply with orders and resisted the officers by kicking and spitting, necessitating the use of a chemical agent to gain compliance.  He also knocked a radio from Wells's belt in the course of his resistance, breaking it when it fell.

Based on these accounts, the prison disciplinary board found Gray guilty of one count of "Intoxication," three counts of "Defiance," four counts of "Aggravated Disobedience," and one count of "Property Destruction."  Gray was also found guilty of having contraband (synthetic marihuana) in his cell.  The board thus issued multiple disciplinary sanctions, including the forfeiture of ninety days' good-time credit.  Gray filed an

Administrative Review Procedure claim in response to the abuse he allegedly suffered, but an investigator granted him no relief.

## II.

Gray sued Wells, White, Sullivan, and Slater under § 1983, claiming that they had subjected him to corporal punishment and excessive force while seizing and detaining him, thus violating his Fourth, Eighth, and Fourteenth Amendment rights. He sought money damages.

The defendants moved for summary judgment, contending that Gray's claims were barred by *Heck*, as they could not be accepted without contradicting the findings of the prison disciplinary board. They also claimed that Gray's claims with regard to the beating after he left the shower must be dismissed under the PLRA because he had not addressed those claims when he had sought administrative relief.

The district court granted summary judgment. It reasoned that "evaluating Plaintiff's claims of excessive force would require the Court to evaluate the need for the force used." Thus, the court concluded that, because the altercations within Gray's cell, during transport to the shower, and within the shower had resulted in the board's finding that Gray had committed disciplinary violations and the resulting loss of good-time credit, it was barred by *Heck* from considering the alleged abuses in those contexts.

As for the beating allegedly suffered during transport away from the showers, the court noted that Gray had not made that allegation in his initial administrative complaint. The court therefore determined that, under the PLRA, the claim could not be properly brought in court.

## III.

On appeal, Gray challenges the summary judgment as to his Eighth Amendment claims. He contends that none of his claims is barred by *Heck* or improper under the PLRA, and he further urges that the district court erred by relying on hearsay in the form of prison disciplinary reports. As

summary judgment is a determination of law, we review it *de novo*. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 328 (5th Cir. 2017) (per curiam). In doing so, we view all facts in the light most favorable to the non-movant, here Gray, and draw all reasonable inferences in his favor. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). We conclude that the district court was correct in granting summary judgment with regard to those claims subject to the PLRA, but we remand for further proceedings to determine whether any of the remaining claims are in fact barred by *Heck*.

IV.

Title 42 U.S.C. § 1983 allows plaintiffs to seek damages from persons who violate their constitutional rights while acting under color of state law. Ordinarily, use of force by a prison officer would qualify for § 1983 liability based on the Eighth Amendment if the force was not applied "in a good faith effort to maintain or restore discipline" but rather "maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). But *Heck* explained that a prisoner may not "seek[] damages in a § 1983 suit" if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 487. Otherwise, § 1983 could be used as a tool effectively to reverse state convictions without recourse to more proper means, such as habeas corpus. Thus, plaintiffs convicted of crimes may not use § 1983 to challenge the validity or duration of their sentences. *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam).

Contrary to Gray's repeated protestations, because *Heck* applies to both the validity *and the duration* of the confinement, "*Heck*'s principle extends to [prison] disciplinary convictions" in addition to criminal convictions. *Bourne v. Gunnels*, 921 F.3d 484, 490 (5th Cir. 2019). "[F]or purposes of *Heck*," a "'conviction' . . . includes a ruling in a prison disciplinary proceeding that results in a change to the prisoner's sentence, including the loss of good-time credits." *Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998)

(en banc).    Therefore, *Heck* precludes § 1983 litigation in the prison-disciplinary-proceeding context where it would "negate [the prisoner's] disciplinary conviction" if negating that conviction would "affect[] the duration of his sentence by restoring his good time credits." *Bourne*, 921 F.3d at 491. Whether the plaintiff in fact seeks the restoration of good time credits, rather than another remedy such as damages, is immaterial. *Aucoin v. Cupil*, 958 F.3d 379, 383 (5th Cir.), *cert. denied* 141 S. Ct. 567 (2020).

Conversely, *Heck* is not "implicated by a prisoner's challenge that threatens no consequence for his conviction or the duration of his sentence." *Muhammad*, 540 U.S. at 751.  So, if the basis of a prisoner's § 1983 claim "is distinct from the basis of his disciplinary conviction," and ruling in the prisoner's favor "would not negate the prison's finding that [the prisoner] violated its polices and was subject to disciplinary action as a result," the *Heck* bar is inapplicable. *Bourne*, 921 F.3d at 491.

The determination of whether an individual claim is barred by *Heck* is thus "analytical and fact-intensive." *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008).  A court may bar only those claims whose success "require[] negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction." *Id.*

The defendants contend that Gray's claims of excessive force are "intertwined" with the findings of the disciplinary board revoking his good-time credits, so they are barred by *Heck*, but the inquiry is not so simple. Decisions of this court are illustrative.  In *Bourne*, a plaintiff had been sanctioned for "[t]ampering" with a food tray slot and "[c]reating a [d]isturbance," but this court concluded that neither of those findings was incompatible with the plaintiff's claim that prison officers had deployed excessive force in response to the infractions. *Bourne*, 921 F.3d at 491.  A finding of excessive force would not have "negate[d] the prison's finding that Bourne violated its policies and was subject to disciplinary action as a result." *Id.*

Similarly, in *Aucoin*, 958 F.3d at 381, the plaintiff alleged physical

abuse in his prison cell, the prison showers, and the lobby. A disciplinary board found him guilty of several disciplinary infractions, including defiance and aggravated disobedience, while he was still within his cell. *Id.* We determined that *Heck* barred the plaintiff's claim that the prison officers attacked him in his cell without provocation—but did not bar those claims related to the showers and lobby, as they were not strictly incompatible with the findings of the disciplinary board. *Id.* at 382–83.

The record is insufficient to determine whether, or which of, Gray's claims are barred by *Heck*. The disciplinary reports list various factual findings but do not state which of these findings were *necessary* to his convictions. It is unclear, for instance, whether commission of "aggravated disobedience," as defined by the disciplinary board, would still leave room for the possibility that the officers' use of force in response to Gray's disobedience violated his Eighth Amendment rights—or, to put it differently, whether "it is possible for [Gray] to have [committed all ten rule violations] *and* for [the officers' use of force] to have" been applied maliciously and sadistically to cause harm. *Ballard v. Burton*, 444 F.3d 391, 398 (5th Cir. 2006). If so, "*Heck* does not bar [his] claim." *Id.*

Moreover, not all of Gray's disciplinary violations resulted in the loss of good time credits. The reports of the disciplinary board indicate that he forfeited ninety days' good time as a cumulative sanction for several of his defiance and aggravated-disobedience infractions, all of which were based on conduct occurring within the shower, but that his sanctions for intoxication, contraband, and property destruction instead resulted in fines and loss of privileges. Disciplinary sanctions of this type bear on the "circumstances of confinement" rather than that confinement's "validity" or "duration" and thus are not barred by *Heck*. *Muhammad*, 540 U.S. at 750.

Because it remains possible reasonably to infer the compatibility of

No. 20-30218

Gray's claims and those findings of the disciplinary board necessary to find Gray guilty of the violations resulting in loss of good time, the defendants have not met their burden for summary judgment with regard to the *Heck* bar. Whether Gray's claims within the shower are in fact barred on the basis of the disciplinary board's findings of defiance and aggravated disobedience must be determined by a fact-specific analysis informed by the elements necessary to establish those violations.

V.

We turn to whether Gray's claims of abuse after leaving the shower are improper under the PLRA. That statute precludes prisoners from asserting § 1983 claims regarding prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). That exhaustion requirement is mandatory. *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016).

Setting the merits aside, defendants are correct that Gray waived this argument by failing to address it before the district court. In their motion for summary judgment, defendants asserted that, because Gray "made no mention" of the allegation that defendants "'beat him continually' while being transported from [shower] . . . any such allegations must be dismissed for failure to exhaust his administrative remedies as to such claims." But, in his opposition to their motion for summary judgment, Gray altogether failed to acknowledge that argument, raising it instead for the first time in his motion for a new trial or to amend or alter the judgment.

A motion for a new trial or to alter or amend a judgment "cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) (quoting *FDIC v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986)). Specifically, when a party fails to raise an argument in opposition to a motion for summary

7

No. 20-30218

judgment and instead raises it for the first time in a motion to alter or amend judgment, that argument is waived. *Indep. Coca-Cola Emps. Union of Lake Charles, No. 1060 v. Coca-Cola Bottling Co. United*, 114 F. App'x 137, 143–44 (5th Cir. 2004) (per curiam).

Assuming *arguendo* that the argument is not waived, it fails on the merits. Gray relies on *Johnson v. Johnson*, 385 F.3d 503 (5th Cir. 2004), to articulate what is required to meet the PLRA's exhaustion requirements. That case discusses the level of detail a prisoner must provide in his administrative complaint, stating that "a grievance should be considered sufficient to the extent that the grievance gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit." *Id.* at 517. Where a complaint concerns an individual prison officer, the reviewing officials can ordinarily expect "details regarding who was involved and when the incident occurred, or at least other available information about the incident that would permit an investigation of the matter." *Id.*

Gray's administrative complaint does not meet that standard. The complaint does not describe any incident that occurred after Gray left the shower area, nor does it refer to the time or place where any such incident may have occurred. Instead, Gray relies on a letter from a jailhouse witness, which claims that the witness saw Officers White and Wells "throw [Gray] to the ground" and saw "Captain Wells repeatedly" kicking him. But that description does not match the claim in Gray's amended complaint. There, he states that two other officers—Slater and Sullivan—"beat him and pulled and dragged him to the transportation van."

Thus, even if a third-party informant's letter could satisfy a prisoner's exhaustion requirements, the letter did not (in the words of Gray's brief) "provide[] functional descriptions or discrete references to times and places" regarding anything that Gray now raises in this suit. Instead, that

8

No. 20-30218

letter describes a different officer kicking Gray while he was on the ground—it does not describe two officers working in concert as they beat him and dragged him to the van.  Consequently, Gray failed to exhaust his administrative remedies for the claims of excessive force after he was taken from the shower area.  Thus, while this decision has no bearing on Gray's ability to bring a further administrative complaint detailing the post-shower allegations, the district court was correct that, under the PLRA, those claims may not properly be brought in court.

## VI.

Gray maintains that the district court erred by considering the reports of the disciplinary committee because those reports were inadmissible hearsay.  This court overturns evidentiary rulings only if they constitute abuses of discretion.  *See, e.g.*, *United States v. Pruett*, 681 F.3d 232, 243 (5th Cir. 2012) (per curiam).  "Hearsay" is a statement that (1) the declarant does not make while testifying and (2) a party offers in evidence "to prove the truth of the matter asserted" in the statement.  FED. R. EVID. 801(c).  The disciplinary reports Gray challenges as hearsay were used to establish that Gray had been found guilty of his prison-disciplinary violations.  They were not used to establish that Gray actually had done the actions recited in the reports, but only that the report was used to assist the decision of the prison disciplinary board.  They were not, therefore, used "to prove the truth of the matter asserted."  *Id.*  Because they were not used "to prove the truth of the matter asserted," the reports were not hearsay.  The district court did not err in considering them.

\* \* \*

In sum, Gray's claims cannot be deemed to be *Heck*-barred because it is impossible to know which of his factual allegations might necessarily contradict his disciplinary convictions.  The allegations of excessive force after

No. 20-30218

Gray left the shower area were properly dismissed, however, because Gray failed to exhaust his administrative remedies. In light of these conclusions, the judgment is AFFIRMED IN PART, VACATED IN PART, and REMANDED. We place no limitation on the matters that the court can address and decide on remand. Nor do we suggest how the court should rule on which claims are precluded by *Heck*.

Don R. Willett, *Circuit Judge*, concurring in judgment alone.

I concur in the judgment for the same reasons discussed in my concurrence today in *Santos v. White*, No. 20-30048. Rather than reiterate my reservations in a footnote, however, I write separately to address the points of departure unique to this case.[1]

I

The majority opinion overlooks two critical facts. First, not all of Appellant's disciplinary violations resulted in the loss of good-time credits. Appellant forfeited 90 days of good-time credit as a cumulative sanction for several of his defiance and aggravated-disobedience infractions, all of which were based on conduct *occurring within the shower*. But other sanctions—namely, those in his cell for intoxication and contraband—resulted in fines and loss of privileges. This ameliorates any conflict between Appellant's in-cell account of unprovoked violence and the Appellees' recollection. Even had these offenses impacted his confinement, Appellant's claim (that Captain Wells used unlawful force) does not contradict the offenses (intoxication and contraband) for which he was found guilty.[2]

Second, Appellant also alleged that Captain Wells unlawfully assaulted him while en route *to the shower*. Neither the incident reports nor any coordinate administrative violation provides a justification for this alleged use of force of force. I therefore see no basis to conclude that this facet

[1] My concerns with the Majority's hearsay analysis are identical to those expressed in *Santos v. White*, and I will not reproduce them here. Suffice it to say, I respectfully disagree.

[2] *Compare Aucoin v. Cupil*, 958 F.3d 379, 383 (5th Cir. 2020) (excessive force claim could not coexist with loss of good-time credits), *with Bourne v. Gunnels*, 921 F.3d 484, 491 (5th Cir. 2019) (opposite, claims could co-exist), *and Ballard v. Burton*, 444 F.3d 391, 400–01 (5th Cir. 2006) (same).

of Appellant's claim "squarely challenges [any] factual determination" of the prison disciplinary board.[3]

As such, I would hold that these claims can proceed and REVERSE.

## II

Neither can I join the majority opinion's dicta related to Appellant's failure to exhaust his administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e. In my view, the majority opinion makes two factual observations that I believe are contradicted by the record.

First, the majority states that Appellant's "[administrative] complaint does not describe any incident that occurred after [he] left the shower area." Not so. After describing the in-shower allegations, Appellant's complaint asserted that "[e]ven while in restraints, Capt. Wells still proceeded to beat me." There is a world of difference between concluding Appellant failed to describe *any incident* and concluding his description was terminally vague under the PLRA. Either way, we need not walk this line if Appellant's failure to raise the argument at trial is dispositive—as the majority correctly concludes.[4] All to say, the majority's characterization of Appellant's complaint is, at best, inapt and, at worst, inaccurate.

Second, the majority opinion suggests that the third-party informant's letter offers no salvation because it "describes a different officer kicking Gray while he was on the ground" and "does not describe two officers working in concert as they beat him and dragged him to the van." But the record, again, suggests otherwise. Appellant's amended complaint states that "Lt. Sullivan and Lt. Slater, Capt. White and Capt. Wells threw [Appellant] on the pavement and punched, kicked and smacked him." This is hardly inconsistent with either (1) the informant's letter, which stated that Officers

---

[3] *Cf. Aucoin*, 958 F.3d at 383.

[4] *Ante* at 7–8.

No. 20-30218

White and Slater were "kicking" Appellant while he was "in full restraints" after being taken "out of the shower . . . [to] the back door," or (2) Appellant's administrative complaint, which alleged that "[e]ven while in restraints, Capt. Wells still proceeded to beat me."

In the end, though, the majority's factual folly proves irrelevant given that Appellant waived his post-shower claims by failing to address them in his opposition to summary judgment. I therefore join only that portion of the majority's analysis.

<p style="text-align:center">*      *      *</p>

I respectfully concur in judgment.