# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 16, 2025

Lyle W. Cayce
Clerk

———————

No. 22-10791

———————

Daniel D. Dillard,

*Plaintiff—Appellee*,

*versus*

Lorie Davis, *Former Director, Texas Department of Criminal Justice*; Jimmy S. Smith, *Senior Warden*; Andrea B. Lozada, *Former Assistant Warden*; Elbert G. Holmes, *Former Assistant Warden*; Cody S. Miller, *Captain*; Bryan D. Reitsma, *Former Captain*; Shon McGee, *Lieutenant*; Gregory S. Fredricks; Dakota R. Denney; Jayton W. Chavers; James Bullard; Timothy Washington, *Major*; Bobby Lumpkin, *Director, Texas Department of Criminal Justice, Correctional Institutions Division*,

*Defendants—Appellants*.

———————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 7:19-CV-81

———————————————————

Before King, Stewart, and Higginson, *Circuit Judges*.

Per Curiam:[*]

————————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-10791

Daniel D. Dillard, a Texas inmate, brought this action against numerous employees of the Texas Department of Criminal Justice ("TDCJ") (hereinafter, "Defendants"), asserting 42 U.S.C. § 1983 claims under the First, Eighth, and Fourteenth Amendments of the United States Constitution. The district court granted in part and denied in part Defendants' motion for summary judgment, concluding that *Heck*[1] did not bar Dillard's claims and that Defendants were not entitled to qualified immunity. Defendants timely filed an interlocutory appeal while Dillard filed an untimely appeal.

Because of the untimeliness of Dillard's notice of appeal, we DISMISS his appeal. We AFFIRM the district court's holding that *Heck* does not bar Dillard's claims. We AFFIRM in part and DISMISS in part Defendants' appeal of the district court's denial of qualified immunity.

## I.

Dillard was convicted of capital murder in 2006 and is currently serving a life sentence without the possibility of parole. In October 2018, Dillard was involved in a fight with former TDCJ-Correctional Institutions Division officer, Olamigoke Omisore. Dillard alleges that Omisore initially provoked the altercation by entering the room that he was in and swinging at him—and that he responded in self-defense. During the fight, Dillard allegedly punched Omisore several times seriously injuring him. It is undisputed that video evidence of the fight exists. But Dillard was denied an opportunity to present that evidence in subsequent prison disciplinary proceedings.

---

[1] *Heck v. Humphrey*, 512 U.S. 477 (1994).

No. 22-10791

TDCJ investigated Dillard and Omisore for disciplinary violations. Its initial report found Omisore's actions "inappropriate" and it anticipated a hearing to review his conduct for violating the department's rules and regulations. But Omisore resigned before TDCJ conducted that hearing or concluded its investigation. Following Dillard's prison disciplinary hearing, he was found to have assaulted Omisore and, as a result, lost his recreation and commissary privileges and 1,562 days of good-time credit. According to Dillard, those good-time credits were subsequently returned to him.[2]

Dillard was also placed in administrative segregation—now called restrictive housing ("RH"). Dillard alleges that he has been in RH, which he claims is indistinguishable from solitary confinement, continuously since the incident in 2018. He further alleges that Defendants have exacerbated the conditions of his confinement by depriving him of meals, showers, and exercise, allegedly resulting in a loss of over 135 pounds.

Dillard filed this § 1983 suit challenging the procedure employed in his prison disciplinary hearing and his prolonged confinement in RH. In his complaint, Dillard sought monetary, declaratory, and injunctive relief. The district court denied Dillard's motion for partial summary judgment, granted Defendants' motion for summary judgment on several claims, denied Defendants' motion for summary judgment based on the doctrine of qualified immunity and *Heck*, and entered a partial final judgment.[3] Dillard and Defendants cross-appealed the district court's order and judgment in

---

[2] A TDCJ time sheet dated February 1, 2022, that Dillard attached as an exhibit to his Supplemental Brief on appeal reflects that his total amount of good time lost was 236 days. This is consistent with his position that 1,562 days of good time were credited back to him. Defendants do not expressly challenge this assertion on appeal.

[3] The district court accepted and adopted as its own the findings, conclusions, and recommendations of the magistrate judge.

No. 22-10791

August 2022. Dillard also filed a post-judgment motion for reconsideration in accordance with Federal Rule of Civil Procedure 59(e). Dillard moved to dismiss his appeal to allow the district court to rule on his pending motion for reconsideration on November 4, 2022. Four days later, we granted that motion.

After his appeal was dismissed and Defendants had filed their brief in the cross-appeal, Dillard moved to suspend the rules under Federal Rule of Appellate Procedure 2.[4] Dillard then moved to remand the case to the district court and dismiss Defendants' appeal for lack of jurisdiction due to the pending motion for reconsideration. On September 21, 2023, we held the appeal in abeyance and granted Dillard's motion to remand for the limited purpose of allowing the district court to rule on his Rule 59(e) motion. The district court subsequently denied Dillard's motion. Later, on May 30, 2024, we denied Dillard's outstanding motions to suspend the rules under Federal Rule of Appellate Procedure 2 and to dismiss Defendants' appeal for lack of jurisdiction. After the district court denied Dillard's Rule 59 motion, Defendants' notice of cross-appeal from the district court's interlocutory order denying their motion for summary judgment became effective. FED. R. APP. P. 4(a)(1)(A), (a)(3). Defendants now bring this interlocutory appeal, challenging the district court's denial of qualified immunity and its *Heck* ruling.

## II.

Dillard challenges the district court's partial grant of summary judgment relief to Defendants on his "Eighth Amendment claims relating to

---

[4] Rule 2 states that "a court of appeals may . . . suspend any provision of these rules in a particular case and order proceedings as it directs." FED. R. APP. P. 2(a). However, Dillard moved to suspend the rules, without giving any specific rule with which he was unable to comply.

inadequate showers, prolonged solitary-like confinement, and COVID-19." However, he voluntarily dismissed his prior appeal filed on August 15, 2022, which places him in the position of someone who has never filed an appeal. *See Colbert v. Brennan*, 752 F.3d 412, 416 (5th Cir. 2014). Thus, his most recent notice of appeal filed on January 2, 2024, is untimely. Because he failed to file a new notice of appeal within the time limits required by Rule 4(a) or to seek relief in the district court as provided by the same rule, his appeal is dismissed based on the untimeliness of the notice of appeal.

## III.

Defendants argue that Dillard's claims are barred by *Heck* because he lost 1,562 days of good-time credit and a favorable judgment on his prison disciplinary hearing due process claims would necessarily imply that his disciplinary conviction was invalid. We disagree.

The *Heck* doctrine precludes inmates from recovering damages under § 1983 for an allegedly unconstitutional "conviction or sentence" without first showing that the conviction or sentence has been invalidated. *See* 512 U.S. at 486–87 (holding that "a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus"); *Aucoin v. Cupil*, 958 F.3d 379, 382 (5th Cir. 2020) (applying *Heck*).

We have jurisdiction to address *Heck* issues on interlocutory appeal. *See Poole v. City of Shreveport*, 13 F.4th 420, 426 (5th Cir. 2021) (holding that this court can review *Heck* issues at the interlocutory appeal stage); *see also Sappington v. Bartee*, 195 F.3d 234, 236 (5th Cir. 1999) (per curiam) (citing *Wells v. Bonner*, 45 F.3d 90, 94–96 (5th Cir. 1995)) (holding that a district

court's "denial of a summary judgment is reviewable and subject to reversal if the claim is barred under *Heck*").

The district court concluded that *Heck* does not bar Dillard's prison disciplinary hearing due process claims. Defendants stress that we have held that "[f]or the purposes of *Heck*, a conviction . . . includes a ruling in a prison disciplinary proceeding that results in a change to the prisoner's sentence, including the loss of good-time credits." *Gray v. White*, 18 F.4th 463, 467 (5th Cir. 2021) (quoting *Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998)). True enough, but that does not end our inquiry. The Supreme Court has acknowledged that *Heck* does not "categorically [apply] to all suits challenging prison disciplinary proceedings." *Muhammad v. Close*, 540 U.S. 749, 754 (2004). Instead, "[t]he determination of whether an individual claim is barred by *Heck* is . . . 'analytical and fact-intensive.'" *Gray*, 18 F.4th at 468 (citing *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008)). Thus, our analysis turns on the unique facts of this case.

Here, Dillard raises due process challenges to a prison disciplinary proceeding that cost him good-time credits which have already been returned to him and could never have affected the duration of his sentence because he

is sentenced to life imprisonment without the possibility of parole.[5] The Supreme Court has held that *Heck* "is not . . . implicated by a prisoner's challenge that threatens no consequence for his [underlying] conviction or the duration of his sentence." *Muhammad*, 540 U.S. at 751. Thus, we conclude that the temporary deprivation of Dillard's—effectively nominal—good-time credits was of no consequence and cannot serve as a basis for barring his § 1983 claims.

Our conclusion is buttressed by the Supreme Court's reasoning in *Wilkinson v. Dotson*, 544 U.S. 74 (2005). There, the Supreme Court explained that a prisoner's suit in an earlier case was *Heck*-barred "not because it sought nullification of the disciplinary procedures but rather because nullification of the disciplinary procedures would lead necessarily to restoration of good-time credits and hence the shortening of the prisoner's sentence." *Id.* at 84. Here, however, Dillard's suit cannot lead to restoration of good-time credits because those credits have already been returned to him and cannot lead to a shortening of his sentence under Texas law because he is serving a life sentence with no possibility of parole.

---

[5] "In Texas, there are two general ways in which an inmate may become eligible for early release. First, an inmate may become eligible for parole; second, he may become eligible for mandatory supervised release." *Teague v. Quarterman*, 482 F.3d 769, 774 (5th Cir. 2007) (citing *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997)); *see also* Tex. Gov't Code Ann. § 508.001 (defining mandatory supervision and parole). Here, because Dillard was convicted of capital murder under Texas Penal Code § 19.03, he is ineligible for mandatory supervision. Tex. Gov't Code Ann. § 508.149(a)(3) ("An inmate may not be released to mandatory supervision if the inmate is serving a sentence for or has been previously convicted of . . . a capital felony under [§] 19.03, Penal Code."). And because he was sentenced to life without parole, he is necessarily ineligible for parole. Tex. Gov't Code Ann. § 508.145(a) ("An inmate is not eligible for release on parole if the inmate is . . . serving a sentence of life imprisonment without parole."). Thus, both avenues for early release are closed. And Defendants acknowledge that, regardless of this suit, Dillard "is going to be in prison for the rest of his life."

In other words, Dillard's due process challenge to his disciplinary hearing does not imply the invalidity of his conviction and cannot change the duration of his sentence. *See Muhammad*, 540 U.S. at 751 (holding that *Heck* is not "implicated by a prisoner's challenge that threatens no consequence for his conviction or the duration of his sentence"). Section "1983 remains available for procedural challenges where success in the action *would not necessarily* spell immediate or speedier release for the prisoner." *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005); *Heck*, 512 U.S. at 487. That is so here. Thus, we hold that Dillard's prison disciplinary hearing due process claims under § 1983 are not *Heck*-barred.

## IV.

Irrespective of *Heck*, Defendants contend that the district court erred in denying summary judgment based on qualified immunity on Dillard's prison disciplinary hearing due process claims, his RH claims, his retaliation claims, and his conditions of confinement claims. We begin, as we must, by assessing whether we have appellate jurisdiction over the remaining issues raised in Defendants' appeal.

"The denial of a motion for summary judgment based on qualified immunity is immediately appealable under the collateral order doctrine to the extent that it turns on an issue of law." *Flores v. City of Palacios*, 381 F.3d 391, 393 (5th Cir. 2004) (internal quotation omitted). But our jurisdiction in this interlocutory context is "significantly limited." *Von Derhaar v. Watson*, 109 F.4th 817, 826 (5th Cir. 2024) (citing *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004) (en banc)). Where the district court determines "that genuine issues of material fact preclude a determination of qualified immunity, we have jurisdiction only to address the legal question of whether the genuinely disputed factual issues are material for the purposes of

summary judgment." *Lytle v. Bexar Cnty.*, 560 F.3d 404, 408 (5th Cir. 2009) (citing *Wagner v. Bay City,* 227 F.3d 316, 320 (5th Cir. 2000)).

Here, Defendants' arguments on appeal relating to Dillard's prison disciplinary hearing due process claims, RH claims, and retaliation claims challenge not just the district court's finding of genuineness, but also materiality, which we have jurisdiction to review. *Id.* Accordingly, we address each of these claims below and affirm the district court's denial of qualified immunity as to all. Because Defendants' arguments as to Dillard's conditions of confinement claims only challenge the district court's finding of genuine fact issues, we dismiss their appeal of the district court's denial of qualified immunity on these claims.

## A. Prison Disciplinary Due Process

Defendants first argue that there is no settled law that requires an inmate to be permitted to present witnesses or particular evidence at a disciplinary hearing. In support, they rely on *Wolff v. McDonnell*, 418 U.S. 539 (1974). *Wolff* outlines the procedural safeguards required by the Due Process Clause in the prison-discipline context: (1) "advance written notice of the claimed violation"; (2) "a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary actions taken"; and (3) opportunity to "call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.* at 563, 566.

Defendants contend that allowing an inmate to call witnesses and present evidence is "heavily discretionary," which the district court allegedly neglected to consider. In doing so, however, they fail to address *Ponte v. Real*, 471 U.S. 491 (1985), which clarified the due-process requirement in a prison-discipline context. There, the Court explained that Defendants have the burden of putting forth an explanation logically related to preventing undue hazards:

No. 22-10791

> The question is exactly that posed by the Supreme Judicial
> Court in its opinion: "whether the Federal due process
> requirements impose a duty on the board to explain, in any
> fashion, at the hearing or later, why witnesses were not allowed
> to testify." . . . We think the answer to that question is that
> prison officials may be required to explain, in a limited manner,
> the reason why witnesses were not allowed to testify, but that
> they may do so either by making the explanation a part of the
> "administrative record" in the disciplinary proceeding, or by
> presenting testimony in court if the deprivation of a "liberty"
> interest is challenged because of that claimed defect in the
> hearing. In other words, the prison officials may choose to
> explain their decision at the hearing, or they may choose to
> explain it "later." . . . [S]o long as the reasons are logically
> related to preventing undue hazards to "institutional safety or
> correctional goals," the explanation should meet the due
> process requirements as outlined in *Wolff*.

*Id.* at 497 (internal citations omitted). Defendants do not point to any such explanation in the record, and the district court found it "unclear why" the hearing officer denied Dillard's request to show the video or present witness testimony.

The law, therefore, was clearly established that Defendants were required to provide an explanation for denying Dillard his due process right to put forth witnesses or present evidence at a disciplinary proceeding, one that was logically related to preventing undue hazards to institutional safety or correctional goals. *Id.* Because they did not, we conclude that the district court did not err in holding, under clearly-established law, that Defendants were required to allow Dillard to put forth such evidence or, at the very least, offer an explanation for why Dillard was not allowed to call witnesses in his defense. *Id.* Accordingly, we affirm the district court's denial of qualified immunity on this issue.

10

No. 22-10791

### *B. Restrictive Housing*

Defendants next argue that the district court erred in holding that Dillard's liberty interest when placed in restrictive housing was clearly established, despite the differences between his factual claims and Fifth Circuit precedent. We are unpersuaded.

In addressing this issue, the district court considered the following cases, among others. In *Wilkinson v. Austin*, Ohio inmates in the Ohio Supermax penitentiary facility ("OSP") were confined under the following conditions:

> Inmates must remain in their cells, which measure 7 by 14 feet, for 23 hours per day. A light remains on in the cell at all times, though it is sometimes dimmed, and an inmate who attempts to shield the light to sleep is subject to further discipline. During the one hour per day that an inmate may leave his cell, access is limited to one of two indoor recreation cells . . . .

> OSP cells have solid metal doors with metal strips along their sides and bottoms which prevent conversation or communication with other inmates. All meals are taken alone in the inmate's cell instead of in a common eating area. Opportunities for visitation are rare and in all events are conducted through glass walls . . . .

> [P]lacement at OSP is for an indefinite period of time, limited only by an inmate's sentence . . . Inmates otherwise eligible for parole lose their eligibility while incarcerated at OSP.

545 U.S. 209, 214–15 (2005). The Court held that, "[w]hile any of these conditions standing alone might not be sufficient to create a liberty interest, taken together, they impose an atypical and significant hardship within the correctional context." *Id.* at 224. "It follows that [these inmates] have a liberty interest in avoiding assignment to OSP." *Id.*

In *Wilkerson v. Goodwin*, this court considered whether the closed-cell restriction ("CCR") conditions for a Louisiana inmate implicated liberty interests. 774 F.3d 845 (5th Cir. 2014). "[C]onsidering the duration of the solitary confinement, the severity of the restrictions, and their effectively indefinite nature," this court held that they did. *Id.* at 855. With respect to duration, the plaintiff had been in solitary confinement for nearly 39 years and this court held that to be an "atypical and significant hardship." *Id.* As for the conditions of CCR, this court noted that the plaintiff was isolated in his cell for 23 hours a day, the exercise allowed in the one hour outside of his cell was limited to isolated areas, there were significant limitations on human contact, and placement was indefinite. *Id.* This court considered it immaterial that there were no parole ramifications attached to CCR given other similarities, the "extraordinary" length of the confinement, and its "effectively indefinite" nature. *Id.* at 855–56. Likewise, in *Bailey v. Fisher*, this court reaffirmed that the "absence of a negative impact on [the plaintiff's] possible release date is not fatal" and that "two and a half years of segregation is a threshold of sorts for atypicality." 647 F. App'x 472, 474 & 476 (5th Cir. 2016).

The above cases that the district court considered sufficiently establish that the RH conditions to which Dillard was subjected give rise to a liberty interest requiring procedural protections. First, Dillard's confinement exceeds three-and-a-half years, above the "threshold of sorts for atypicality" identified by this court in *Bailey* and indicated in *Wilkerson*. Second, Dillard is isolated in his cell for 22.5 to 24 hours a day. Third, his cell is six feet by nine feet, smaller than the one in *Wilkinson*. Fourth, his cell is outfitted with a solid steel door, inhibiting interaction with those on the outside. Fifth, there are no windows. And sixth, he only gets outdoor time twice a week, the only time he gets fresh air.

Even though Dillard received numerous review hearings, the committee at each hearing extended his RH confinement with a mere two-

word explanation: "Staff Assaultive." Subsequent hearings ended in the same result, with no additional findings or conclusions. As the district court reasoned, "[a] reasonable jury could find Dillard's ongoing RH confinement has been, and remains, effectively indefinite."

The facts in Dillard's case closely resemble those in *Wilkerson* that led this court to conclude that "a reasonable prison official would have been on notice that continuing [the plaintiff's] solitary confinement would give rise to a liberty interest": "23-hour-a-day in-cell confinement, limited physical exercise, limited human contact, and effectively indefinite placement." 774 F.3d at 858. Thus, under *Wilkerson*, and other similar cases, we hold that Dillard had a clearly-established liberty interest in avoiding his RH confinement. We affirm the district court's denial of qualified immunity on this issue.

### *C. Retaliation*

Defendants next assert that, for Dillard's retaliation claim, "there is no effort by either Dillard or the district court to demonstrate how any of these Appellants acted unreasonably in light of settled law as to lose qualified immunity." But this assertion is belied by the record because the district court quoted and applied this court's express statement in *Wood v. Smith* that "[t]he law of this circuit is clearly established . . . that a prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct." 60 F.3d 1161, 1164 (5th Cir. 1995). Consequently, we affirm the district court's denial of qualified immunity on this issue.

No. 22-10791

### *D. Conditions of Confinement*

With respect to Dillard's conditions of confinement claims related to meal-deprivation and exercise/recreation, Defendants argue that "the district judge once again adopt[ed] a cobbled-together, close-enough standard of settled law." Again, their argument is unsupported by the record.

Regarding the meal-deprivation claim, the district court held that it was clearly established that "state prisoners are entitled to reasonably adequate food." *Cooper v. Sheriff, Lubbock Cnty.*, 929 F.2d 1078, 1084 (5th Cir. 1991). It also stated that, while the state need not provide three meals a day, it must provide "well-balanced meal[s], containing sufficient nutritional value to preserve health." *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (modification in original).

The district court noted that Dillard was "often" deprived of meals. Although Dillard lost over 130 pounds, the district court determined that such weight loss was, to some extent, "self-inflicted," because he declined 22 consecutive meals as a form of hunger strike to protest RH. The district court further noted that there was no evidence that Defendants ever completely deprived Dillard of food for more than seven consecutive days. The evidence showed instead that only lunches and dinners were withheld for seven-day periods at most, with breakfast still provided. So, the district court held, Dillard's meal-deprivation claim "turns on the caloric content and overall nutritional value of those breakfast meals."

We agree that this circuit's clearly-established law provides that "[t]he Eighth Amendment requires that inmates be provided 'well-balanced meal[s], containing sufficient nutritional value to preserve health.'" *Berry*, 192 F.3d at 507 (quoting *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986)). Dillard's weight loss of more than 130 pounds, however, creates a genuine fact issue as to whether the breakfast given to him "contain[ed] sufficient nutritional value to preserve health." *Id*. Given that this argument turns on

the genuineness of a fact issue, we are without jurisdiction to review it due to the interlocutory posture of this appeal. *See Lytle*, 560 F.3d at 408.

As to Dillard's exercise/recreation claim, we again note that the district court faithfully applied this court's precedent on exercise in prisons. As the district court pointed out, "[t]he Supreme Court has identified exercise as 'an identifiable human need' protected by the Eighth Amendment." *Hewitt v. Henderson*, 271 F. App'x 426, 428 (5th Cir. 2008) (per curiam) (quoting *Wilson v. Seiter*, 501 U.S. 294, 304–05 (1991)). Thus, "[t]his court has held that deprivation of exercise may constitute an impairment of health, which is actionable under the Eighth Amendment." *Id.* Importantly, "[t]his court has suggested that deprivation of exercise claims should be evaluated on a case-by-case basis using, inter alia, the following criteria: (1) the size of the inmate's cell; (2) the amount of time the inmate spends locked in his cell each day; and (3) the overall duration of the inmate's confinement." *Id.*

Applying these principles, the district court held that "[s]ummary judgment is . . . improper on this point because it is unclear how much exercise Dillard received and how that amount affected his physical condition, weight loss, and medical conditions." The district court's decision thus applied this circuit's clearly-established law and found genuine fact issues which remain unreviewable at this point. *See Lytle*, 560 F.3d at 408.

For these reasons, we dismiss Defendants' arguments related to the district court's denial of qualified immunity on Dillard's conditions of confinement claims with respect to meal deprivation and exercise/recreation.

## V.

For the foregoing reasons, we DISMISS Dillard's appeal due to the untimeliness of his notice of appeal and we AFFIRM the district court's

No. 22-10791

holding that Dillard's claims are not barred by *Heck*. We AFFIRM the district court's denial of qualified immunity based on its findings of clearly-established law as to Dillard's prison disciplinary hearing due process, RH, and retaliation claims. We DISMISS for lack of jurisdiction Defendants' appeal of the district court's denial of qualified immunity as it relates to Dillard's conditions of confinement claims.[6]

---

[6] On September 30, 2024, Dillard filed a motion to affirm the district court's judgment. For the aforementioned reasons, his motion is DENIED as MOOT.